**LOS ANGELES & S. L. R. CO. v. UNITED STATES.**

No. 42568.

Court of Claims.

Dec. 6, 1937.

Harry J. Gerrity, of Washington, D. C. (Henry W. Clark, of New York City, on the brief), for plaintiff.

Guy Patten, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This is a suit upon two claims of refund for the recovery of federal income and profits taxes alleged by the plaintiff to have been overpaid.

It appears that a controversy arose as to the proper amount of plaintiff's taxes for the calendar year 1919. It is not necessary to set out here the details of the proceedings in relation to these taxes as the parties are in agreement that the only matters now in dispute relate to certain additions to the income of plaintiff made by the Commissioner in his final audit of the taxes for the year in controversy. The sole issue in the case is whether these items were properly assessed as income. The items of increase to income so included are as follows:

Additional railway- mail pay for carrying the mails in 1916 and 1917, awarded in 1919, and paid to plaintiff in 1920.......... $73,255.65
Adjustments growing out of contract with Utah Copper Company in relocation of a portion of plaintiff's main line track:
  (a) ........................................ 127,317.84
  (b) ........................................ 46,125.00
  Total .................................... $246,698.49

With reference to the railway mail pay item, it appears that the services were rendered in 1916 and 1917, but that there was a controversy over the rate of pay and litigation to determine it was pending before the Interstate Commerce Commission so that the amount due the plaintiff could not be determined until this matter was decided. The Interstate Commerce Commission determined the rate of compensation in 1919, but the plaintiff did not receive payment until 1920. The plaintiff contends that either the time of the performance of the work, or the time when the pay was actually received, must be taken as the period for assessment, and in this connection calls attention to the fact that the decision of the Interstate Commerce Commission was not made available to the public, or served on the interested carriers including the plaintiff, until 1920.

In our opinion, the time when notice of the decision was served upon the plaintiff is immaterial, and the Commissioner might properly take the time when the amount of pay due the plaintiff was definitely settled as the year for the assessment on the income so derived.

During the period involved in the case there was much litigation between the railroads and the government with reference to the amount of railway mail pay. In many cases after the amount had been determined, the question further arose as to when the pay for each year accrued. The decisions of the courts have been at variance on this point. The Board of Tax Appeals first held that the amount to be paid accrued when the services were performed. Later, it reversed this holding and the decisions of other tribunals cannot be harmonized. Upon the whole, we think that the opinion and decision of the Circuit Court of Appeals for the Second Circuit in the case of New York Cent. R. Co. v. Commissioner of Internal Revenue, 79 F.2d 247, 252, certiorari denied New York Life Ins. Co. v. Viglas, 296 U.S. 571, 56 S.Ct. 370, 80 L.Ed. 403, furnishes the most satisfactory solution for the problem presented. The facts in the case were precisely similar to the facts in the case at bar, and, although the court did not necessarily have to pass on the question now before us, much that is said in the opinion is, we think, applicable. In that case the Commissioner of Internal Revenue contended that the railway mail pay accrued for tax purposes in the year 1920 while the railroad company contended it should be regarded as income at least not later than the year 1919. The court held against the Commissioner, and, after reviewing all of the early decisions of the Board of Tax Appeals on the question, said: "At least as early as December 23, 1919, all the facts existed which determined the amount of the government's liability, and all these facts were known to the taxpayer prior to the time of preparing its income tax return for that year. See Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 298, 52 S.Ct. 529, 76 L.Ed. 1111. Since the taxpayer reported on the accrual basis, we can see no justification for deferring accrual of the income beyond the year when the precise amount thereof could have been included in the tax return."

The court's final conclusion was that the income should have been included in the return for the year 1919 when the amount was definitely fixed.

It may be argued that the case of Continental Tie & Lumber Co. v. United States, supra, does not support the decision of the Circuit Court of Appeals, but in the case decided by that court and the case now before us the facts differed from those in the Continental Tie Case in an important feature; namely, that the taxpayer had not seen fit to accrue on its books or report the income involved as having been a part of its income for the year in which it was earned. In both the Continental Tie Case, and the case at bar the matter was treated

as unsettled and as one in which the income was to be reported at a later date when its amount was definitely ascertained.

It will be observed that if the plaintiff had returned the income involved in the year when it was earned it could only make an estimate of its amount and when it was definitely determined it would be necessary to file an amended return. In fact the correct assessment upon this railway mail income could not be made until the amount was definitely ascertained and more time would elapse before the tax was assessed so that the statute of limitations would have run in many cases. It may be that a tentative return should be made in such cases and a tentative assessment made; but this leaves the whole matter in uncertainty and in any event is a very cumbersome method of procedure. A far better rule, in our opinion, where the books of the taxpayer are kept on an accrual basis, is to make the return for the year in which the income was definitely determined and the amount which would accrue ascertained.

In Lucas v. American Code Co., 280 U. S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010, it was said: "The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test. And the direction that net income be computed according to the method of accounting regularly employed by the taxpayer is expressly limited to cases where the Commissioner believes that the accounts clearly reflect the net income. Much latitude for discretion is thus given to the administrative board charged with the duty of enforcing the act."

It will be noted that the requirement that the net income be computed according to the method of accounting regularly employed by the taxpayer is limited to cases where the Commissioner believes the accounts clearly reflect the net income and that consequently much latitude for discretion was given, and it was further held by the court that the "interpretation of the statute and the practice adopted" by the Revenue Bureau "should not be interfered with unless clearly unlawful." Applying practical tests to the situation in the case at bar, we find, first, that the rule now contended for by plaintiff is difficult to apply and cumbersome in practice; second, that it is quite plain that the Commissioner did not believe it would clearly reflect the income of the taxpayer to return the railway mail income as taxable for the year in which it was earned in some indefinite amount. Following the decision in the Lucas Case, supra, we think the Commissioner's act in assessing the railway mail pay as income for 1919, the year for which the amount was definitely decided, was not "clearly unlawful."

The items of $127,317.84 and $46,125.00, included among the additions to income for 1919 by the final audit letter, as before stated grew out of a contract between the plaintiff and the Utah Copper Company. There is no dispute with reference to the terms of the contract, a copy of which is attached to the stipulation of facts agreed to by the parties and made a part of the record. It provided for an exchange of properties, the abandonment of several miles of plaintiff's track, and its relocation, with several minor agreements to which reference will hereinafter be made.

It appears that the Copper Company needed additional land and the location of plaintiff's line prevented its acquisition in a useful way. To accommodate the former, the railway company agreed to relocate its line on land furnished by the Copper Company which was to pay all the expenses of the relocation.

The defendant claims there was an exchange of properties, but the plaintiff alleges there was merely a donation, and contends that even if there was an exchange the tax was not assessed for the proper year. To this the defendant replies that the plaintiff is estopped from claiming the tax was not assessed for the proper period. We are clear that there was an exchange of properties, but unless there was some gain or profit resulting to plaintiff from the exchange no tax could properly be assessed thereon. In our opinion, the contract should be considered as a whole, and the question of gain or profit must depend upon the condition of plaintiff after all of the provisions of the contract had been performed as compared to its situation before the contract had been entered into. When this is done, we find that when the contract had been fully performed in all its particulars the plaintiff had given up a portion of its line with all appurtenances including the right of way, and had received instead a new line with right of way and all necessary appurtenances. The new line was longer and cost much more than the old line, the extra cost according to plaintiff's books being

$127,317.84, but it was of no more use to the railway company than the old line and would not produce a cent more income. Nor was the value of plaintiff's assets as a whole increased by a single dollar. The fact that the plaintiff had entered in its investment account the sum last above stated (subsequently transferred to "donations") does not alter the situation. There was no proper basis for this charge to the investment account, and we cannot perceive how the plaintiff made any profit out of any part of the transaction or received any benefit.

The statement above needs a slight qualification, but it is too slight in our opinion to make any difference in the final judgment.

Under the contract, the Copper Company was to construct the new line but the railway company was to pay for the rails, joints, and tie plates, etc., used in its construction, except as required for the excess in mileage of the new construction over the old. In the construction of the new line, the Copper Company must have used new ties which were worth somewhat more to plaintiff than the old ties and the railway company may have benefited in some slight degree by some of the other minor agreements with reference to highways, buildings, and appurtenances; the amount of which cannot in any event be determined or even estimated from anything in the evidence. These matters we think are not sufficient to justify an assessment in any amount. Our conclusion is that the assessment of $127,317.84 upon gain or profits in the exchange of properties is erroneous. There is likewise no basis for the assessment of $46,125 in connection with the transaction. The Copper Company agreed to pay this amount in consideration that the new line was longer, its upkeep and operation would cost more, and in particular because the nature of the soil upon which it was constructed was boggy. Like the other minor agreements of the contract, the purpose of this provision was simply to make the plaintiff whole in the transaction and to insure it against loss, and so far as shown by the evidence this is all that was accomplished by this provision and the contract as a whole. The parties agreed upon a sum to be paid at once which they estimated would reimburse the plaintiff for additional expense incurred in operating the new line, and when this was paid the plaintiff derived no profit or gain. We find that

the Commissioner erred in assessing the item of $46,125.

What we have said above makes it unnecessary to determine the other points discussed by respective counsel. The total amount erroneously assessed against plaintiff is $173,442.84. The parties have stipulated as to the manner of computing the amount of plaintiff's recovery should the court determine that it is entitled to recover in the case. Following this stipulation, we find the amount of plaintiff's recovery to be $12,020.50. Judgment will be rendered accordingly.