DUMARI TEXTILE CO., INC., A NEW YORK CORPORATION, 78 WORTH STREET, NEW YORK, N. Y., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106875.    Promulgated August 25, 1942.

*William E. Russell, Jr., Esq.*, for the petitioner.
*J. Richard Riggles, Jr., Esq.*, for the respondent.

640

642

OPINION.

VAN FOSSAN: This proceeding raises the issue whether payments made under section 602 of the Revenue Act of 1936 [1] were income accruing in 1936 when this section was enacted, or in the year when the payments were actually received by the taxpayer. Petitioner contends that because it was on an accrual basis the payments it received under this section were income in 1936. Respondent, on the other hand, argues that the payments were income in 1938 since they were not determined to be due petitioner until that year.

Income accrues to a taxpayer on an accrual basis when the *right* to receive the income becomes fixed and not when the income is actually

---

[1] SEC. 602. FLOOR STOCKS AS OF JANUARY 6, 1936.

(a) There shall be paid to any person who, at the first moment of January 6, 1936, held for sale or other disposition (including manufacturing or further processing) any article processed wholly or in chief value from a commodity subject to processing tax, an amount computed as provided in subsection (b), except that no such payment shall be made to the processor or other person who paid or was liable for the tax with respect to the articles on which the claim is based.

(b) The amount of the payment under subsection (a) shall be equal to the processing tax which would have been payable with respect to the commodity from which the article was processed, if it had been processed on January 5, 1936, but not in excess of (1) the amount of the burden of the tax with respect to the article which was shifted to the claimant in the price he paid for the article (to the extent that the claimant has not received and is not entitled to receive reimbursement for such burden from the processor or other vendor) and *not in excess of* (2) *the amount of that part of the burden of the tax applicable to the articles held on January 6, 1936, which the claimant has not passed on to his vendees and has not included in the sale price of such articles.* In lieu of a detailed schedule of articles, purchases, sale prices, and sales under clauses (1) and (2) of this subsection, the claimant may (subject to the approval of the Commissioner and such investigations as he may cause to be made) submit, as a part of his claim, an affidavit setting forth the total amount of tax burden passed on to him on the articles with respect to which claim is made; the total amount of such burden for which he has received or is entitled to receive reimbursement from the processor or other vendor; the total amount of such burden that he has passed on to his vendees or has included in the sale prices of such articles; and the total amount of such burden that he has borne himself.

\* \* \* \* \* \* \*

(d) No payment shall be made under this section unless the claimant files a claim therefor prior to January 1, 1937, in conformity with regulations prescribed by the Commissioner with the approval of the Secretary, nor unless he establishes to the satisfaction of the Commissioner the facts on which such claim is based.

(e) No claim under this section shall be disallowed on the ground that the tax with respect to the article or the commodity from which processed has not been paid, but no claim shall be allowed in an amount less than $10. No payment shall be made under this section in connection with any article with respect to which a refund has been allowed or credit has been taken under the Agricultural Adjustment Act, as amended, or a refund has been allowed or is allowable under section 601 of this title.

\* \* \* \* \* \* \*

(h) In the absence of fraud the findings of fact and the decision of the Commissioner upon the merits of any claim under this section, and the mathematical calculation therein shall not be subject to review by any other administrative or accounting officer, employee, or agent of the United States.

(i) The determination of the Commissioner with respect to any payment under this section shall be final and no court shall have jurisdiction to review such determination.

received. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. The statute provided that:

> There shall be paid to any person who, at the first moment of January 6, 1936, held for sale or other disposition * * * any article processed * * * from a commodity subject to processing tax, an amount computed as provided in subsection (b), * * *

Thus, the payment under this section was mandatory if petitioner held any article within the scope of the section. The right to receive the payment was not contingent on any future event. Everything had happened which could have happened from which to determine the amount of the payment. There remained only the necessity of filing the claim and proving the facts to the Commissioner of Internal Revenue for petitioner to become entitled to the payment. These requirements, obviously, had no bearing on when the payment accrued since they did not affect the amount.

This situation is strikingly similar to the one in *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290, which involved a payment received by a taxpayer in 1923 pursuant to an award in that year by the Interstate Commerce Commission under section 204 of the Transportation Act of 1920 providing for compensation to railroads operated by the Federal Government from December 28, 1917, to June 3, 1918. Under the act the Commission was directed to compare the results of the operation of the railroad while under Federal control with those of a test period from June 30, 1914, to June 30, 1917, and if these results were less favorable during the period of Federal control than during the test period to award an amount calculated as prescribed by the section. In that case the position of the parties was exactly the reverse here found. The Government contended for the conclusion here asked by petitioner. The Supreme Court decided that the award to the taxpayer had accrued in 1920 and therefore was taxable income in that year instead of in 1923, the year the award was made, stating as follows:

> * * * The petitioner correctly states that at the date of the act's adoption no railroad had a vested right in any amount; until the Commission made an award nothing could be paid, no proceeding was available to compel an allowance, or to determine the elements which should enter into the calculation. In short, says the petitioner, the carrier had no rights, but was dependent solely upon the Commission's exercise of an unrestrained discretion, and until an award was made nothing accrued. But we think that the function of the Commission under the act was ministerial, to ascertain the facts with respect to the carrier's operating income by a comparison of the experience during the test period with that during the term of federal control. The right to the award was fixed by the passage of the Transportation Act. What remained was mere administrative procedure to ascertain the amount to be paid. Petitioner's right to payment ripened when the act became law. What sum of money that right represented is, of course, a different matter.

The petitioner says that at the date of the passage of the act it was impossible to predict that any award would be made to the railway, and, assuming one would eventuate, its amount could not be estimated, for the reason that the principles upon which awards were to be made had to be settled by the Commission and were not finally formulated until 1923. The government insists that, while adjustments or settlement of principles by the Commission might vary the amount to be awarded, the petitioner's case presented problems not differing from those confronting many business concerns which keep accounts on an accrual basis and have to estimate for the tax year the amount to be received on transactions undoubtedly allocable to such year. Admitting there might be differences and discrepancies between the railway's estimate and the amount awarded by the Commission, these, says the government, could, as in similar cases, have been adjusted by an additional assessment or a claim for refund after final determination of the amount due.

* * * But in spite of these inherent difficulties we think it was possible for a carrier to ascertain with reasonable accuracy the amount of the award to be paid by the Government. Subsequent to its order of June 10, 1920, the Commission made no amendment or alteration of the rules with respect to the information to be furnished under section 204. Obviously the data had to be obtained from the railway's books and accounts and from entries therein all made prior to March 1, 1920. These accounts contained all the information that could ever be available touching relevant expenditures. Compare *United States* v. *Anderson*, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. The petitioner was promptly informed by the terms of section 209 as supplemented by the instructions issued by the Commission of the method to be followed in allocating charges to operation during periods under inquiry. It does not appear that a proper effort would not have obtained a result approximately in accord with what the Commission ultimately found.

The above quotation answers the argument of respondent that the payment did not accrue until 1938 because final action upon the claim was entirely within the discretionary powers of the Commissioner of Internal Revenue. The Supreme Court held that the function of the Commission was ministerial. So we believe was the function of the Commissioner in the instant case. It was his duty to ascertain the amount of the burden of the processing taxes actually borne by petitioner in the price he had paid for articles held by him. This was purely a matter of computation under the express direction of the statute.

This proceeding is also like *Continental Tie & Lumber Co.* v. *United States, supra,* in that the data from which to determine petitioner's claim had to be obtained from petitioner's books and accounts, which had been closed as of June 30, 1936, and in that "these accounts contained all the information that could ever be available touching relevant expenditures." That it was possible to ascertain the amount of the payment with a fair degree of accuracy for the taxable year in question was shown when petitioner filed a claim for refund prior to the enactment of section 602 and when the amount was estimated by petitioner before it closed its books for the fiscal year in question. That this estimate later turned out to be too large is immaterial, as

indicated in *Continental Tie & Lumber Co.* v. *United States, supra,* wherein it is stated:

\* \* \* The books and accounts fixed the maximum amount of any probable award, and, if petitioner had endeavored to make reasonable adjustments of book figures, it could have arrived at a figure to be accrued for the year 1920. Any necessary adjustment of its tax could readily have been accomplished by an amended return, claim for refund, or additional assessment, as the final award of the Commission might warrant.

That the Commissioner had the final power to determine the merits of petitioner's claim did not affect petitioner's right to the claim. This right was fixed by the statute, and under the statute it was the Commissioner's duty to make the payment to petitioner if the facts supporting the claim were proved to the Commissioner's satisfaction. Thus, the statute did not give the Commissioner the discretionary power of denying arbitrarily petitioner's claim.

Neither does the fact that the functions of the Commissioner in respect of claims filed under section 602 were of a judicial nature, in that no other remedy was available to claimants, affect our decision. The determination by the Interstate Commerce Commission regarding claims under the Transportation Act of 1920 involved in *Continental Tie & Lumber Co.* v. *United States, supra,* was also final and of a judicial nature, but this was regarded by the Supreme Court as unimportant. *Butte, A. & P. R. Co.* v. *United States,* 290 U. S. 127.

Accordingly, we hold that petitioner's right to receive the payments in question was fully ripened on June 22, 1936, the date section 602 became law, and therefore they were income which accrued in petitioner's fiscal year ended June 30, 1936.

*Decision will be entered for the petitioner.*