Semon Amzalak v. Commissioner. The Mally Company of Rochester, Inc. v. Commissioner. Dan Amzalak v. Commissioner. Henry Amzalak v. Commissioner.
Amzalak v. Commissioner
Docket Nos. 36228, 36231, 36233, 36236.
United States Tax Court
1953 Tax Ct. Memo LEXIS 69; 12 T.C.M. (CCH) 1273; T.C.M. (RIA) 53349; November 4, 1953
*69 Payments totaling $15,000 made by a partnership to a corporation, found to be in consideration of the acquisition of the good will of the corporation whose stock of goods was also being acquired. Held that such payment was a capital expenditure not deductible as a business expense, and represented long-term gain to the corporation, no cost basis having been shown of the good will transferred. Darrow A. Dutcher, Esq., 400 Central Trust Building, Rochester, N. Y., for the petitioners. John J. O'Toole, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income *70 and declared value excess profits taxes as follows: Name
Docket No.
Tax
Year
Deficiency
Semon Amzalak
36228
Income
1944
$ 447.94
Semon Amzalak
36228
Income
1945
460.69
Dan Amzalak
36233
Income
1944
1,489.42
Dan Amzalak
36233
Income
1945
2,286.08
Henry Amzalak
36236
Income
1944
458.69
Henry Amzalak
36236
Income
1945
431.93
The Mally Company of Rochester, Inc.
36231
Income
1943 (fiscal)
3,427.10
Declared Value
The Mally Company of Rochester, Inc.
36231
Excess Profits
1943 (fiscal)
333.25 The proceedings were consolidated for trial and decision. The issue is whether $15,000 paid over three years at $5,000 a year by a partnership to a corporation was a deductible business expense in each of those years or a capital expenditure by the partnership. Other issues originally raised under Docket No. 36233 were withdrawn by stipulation. Findings of Fact Petitioners Dan, Henry, and Semon Amzalak are brothers. Henry and Semon reside in Worcester, Massachusetts, and filed their returns with the collector for the district of Massachusetts. Dan resides in Henrietta, New York. Petitioner corporation, The Mally Company of *71 Rochester, Inc., hereafter referred to as the corporation, is a New York corporation with its principal office in Rochester, New York. Dan and the corporation filed their returns with the collector for the 28th district, New York. The corporation reported on a fiscal year basis, the year ending September 30. Dan, Henry, and Semon Amzalak have been continuously engaged in the business of retailing women's clothing in Rochester, New York, as a copartnership since 1922. From 1932 to the time of the hearing, the partnership conducted this business at 17 East Avenue in Rochester. Petitioner corporation was created on October 4, 1935. The capital stock of the corporation is owned one third each by the brothers. It operated a retail women's clothing store at 100 East Avenue, about one block from the partnership store at 17 East Avenue. Dan was the most active member of the corporation, acting as buyer and the store's principal salesman. He spent most of his time in the work of the corporation rather than the partnership. In August 1943, the brothers as partners entered into an agreement with the corporation, in pertinent part as follows: "THIS AGREEMENT, made and executed this day *72 of August, 1943, between THE MALLY COMPANY OF ROCHESTER, INC., first party, and DANIEL AMZALAK, SEMON AMZALAK and HENRY AMZALAK, of Rochester, New York, and Worcester, Massachusetts, respectively, second parties, WITNESSETH: "First party has for some time been engaged in the retail ladies' wear business in the City of Rochester, New York; second parties have been financially interested therein and have likewise been employed by the corporation; first party also owns certain real estate. "It has been agreed upon by the parties that first party shall retain its real estate holdings, but it shall dispose of the retail store business which it has operated at 17 East Avenue, Rochester, New York. "In consideration of the premises, therefore, and the mutual agreements herein contained, the parties have agreed and hereby do agree as follows: "1. That first party does hereby sell to second parties and second parties do hereby purchase from first party its inventory of merchandise and equipment and store fixtures, its accounts receivable, and its prepaid insurance as of September 1, 1943, together with such rights of first party in the two leases of premises at 17 East Avenue, Rochester, *73 New York, as can be transferred. "2. In consideration therefor second parties will (a) pay first party the book value of all of such items, less first party's liabilities which appear upon the books of the corporation, which said liabilities second parties do hereby assume and agree to pay as part of the purchase price of said items; (b) in addition thereto second parties will pay first party Twenty-five per cent (25%) of the net profits of the said retail business which they propose to carry on at 17 East Avenue, Rochester, New York, under the name of 'Mally's', each year for a period of three (3) years from September 1, 1943, it being understood that the minimum amount to be paid to first party by second parties for each of said years is Five thousand dollars ($5,000.00). "3. First party does hereby transfer to second parties the right to use the name 'Mally's' and the goodwill of its retail store heretofore conducted at 17 East Avenue, Rochester, New York." * * *
The corporation closed its store at 100 East Avenue and the assets purchased were moved to the partnership store at 17 East Avenue. Two salesgirls from the corporation store were transferred to the partnership *74 store. The corporation, which remained in existence, from time to time loaned money to the partnership for working capital. No specifications as to dates, amounts, terms, or repayments are shown in the record. The brothers as partners filed a partnership certificate to do business under the name of "Mally's" in place of its former name of "Edson". The profits of this partnership were divided 60 per cent to Dan, 20 per cent each to Semon and Henry. At this time one brother was entering the armed forces, another expected to be drafted, and Dan was to run the business. The partnership paid to the corporation the book value of the assets (approximately $24,000) and, in addition, $5,000 a year for three years pursuant to the contract terms. With respect to the corporation, respondent held that the $5,000 reported as other income in each of the fiscal years 1944, 1945, and 1946 constituted gain from the sale of intangible assets in the fiscal year ended September 30, 1943, "rather than proceeds of a joint venture." Consequently respondent included $15,000 in income in the fiscal year ended September 30, 1943, and eliminated $5,000 from income in each of the fiscal years ended September 30, 1944, 1945, *75 and 1946. With respect to the partnership, respondent increased the distributive share of each of the partners in the net income of the partnership for the calendar years 1944 and 1945 by disallowing deduction of the annual $5,000 payments as ordinary business expenses, treating the total $15,000 as a capital expenditure. Of the total consideration paid for the corporate assets, the book value of approximately $24,000 was paid for the tangible assets and the remainder, 25 per cent of the net profits of the partnership or the minimum amount of $5,000 a year for three years, was paid for the intangible assets, i.e., the name "Mally's" and corporate good will. Opinion The question presented is whether the $15,000 paid in three annual installments was a deductible business expense in each of those years, or a capital expenditure by the partnership. Sections 23(a)(1)(A) and 111(a), (b), (c), Internal Revenue Code. The respondent made adjustments in all dockets on the assumption that the $15,000 was a portion of the total consideration paid for the corporation's assets pursuant to the contract of 1943, and therefore a capital expenditure of the partnership. *76 Of the total consideration paid for the corporate assets, we have found on the record that the book value of approximately $24,000 was paid for the tangible assets and the remainder, 25 per cent of the net profits of the partnership or the minimum amount of $5,000 a year for three years, was paid for the intangible assets, i.e., the name "Mally's" and corporate good will. We think this finding is amply supported by the record. Petitioners attempt to establish the fact that the good will acquired from the corporation was without value. With this we do not agree, as the corporation had been conducting a profitable business and the partnership definitely appears to have set a value on the name "Mally's" as it discontinued the use of its name and substituted the name acquired. However, the question of value of the good will has no bearing upon the question which determines the issue submitted. We are concerned only with the character of the purchase and not the value of the asset acquired. As to the argument by petitioners' counsel on brief that the payment of $15,000 should be considered as a distribution by the partnership to the corporation of profits from a joint venture by the *77 two, this is wholly without merit as there are no facts indicating the existence of such relationship. As we conclude that petitioners have not shown that the $15,000 was anything other than consideration for the corporate intangibles transferred (including good will, the name, and going concern value), the partnership having paid the book value of the tangible assets (including inventory), all in accordance with their contract of sale, these payments are not deductible from the net income of the partnership either as petitioners contended or as cost of goods sold. Respondent included the entire $15,000 in the income of the corporation for the fiscal year 1943. This was done apparently on the assumption that the corporation was on the accrual basis of accounting. No evidence on this point was submitted. We accept this assumption to be the fact inasmuch as the character of the business was such that a cash basis would not clearly reflect its income, and the determination on such basis was not contested by the petitioners. The contract specified that $15,000 was to be the minimum sum to be paid as this portion of the consideration for the assets purchased, and the sale was effected *78 as of September 1, 1943, therefore the amount and the right to receive payment were fixed in 1943 and properly accruable in that year. Section 42, Internal Revenue Code; Continental Tie & Lumber Co. v. United States, 286 U.S. 290; Spring City Foundry Co. v. Commissioner, 292 U.S. 182. Finally, the entire $15,000 represented long-term capital gain of the corporation in that it was the purchase price for intangible assets held over six months, which assets were not shown to have a cost basis. Section 111, Internal Revenue Code. We conclude, on the record, that respondent did not err in his determinations. Decisions will be entered for the respondent.