T.C. Memo. 2006-119

UNITED STATES TAX COURT

WILLIAM C. AND JOSEPHINE HOUCHIN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

W.C. HOUCHIN CORPORATION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11944-03, 11945-03.  Filed June 12, 2006.

H. Cranston Pope, for petitioners.

Stephen R. Takeuchi, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined a deficiency of

$267,661[1] and an accuracy-related penalty under section 6662(a)[2]

_____

[1]  All amounts are rounded to the nearest dollar.

[2]  Unless otherwise indicated, all section references are to
(continued...)

of $53,532 with regard to petitioners William and Josephine Houchin's 1999 Federal income tax. Respondent determined the following deficiencies in and accuracy-related penalties on petitioner W.C. Houchin Corp.'s Federal income taxes:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|---------------------|
| 1998 | $1,211,643 | $242,329 |
| 1999 | 1,276,748 | 255,350 |

After concessions,[3] we must decide (1) whether petitioner W.C. Houchin Corp. should recognize $6,145,315 of lawsuit settlement proceeds in income in 1998, (2) whether petitioners William and Josephine Houchin are liable for the accuracy-related penalty pursuant to section 6662(a) for 1999, and (3) whether W.C. Houchin Corp. is liable for the accuracy-related penalty pursuant to section 6662(a) for 1998.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners William and

---

[2](...continued)
the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3] On brief, respondent conceded the 1999 deficiency and penalty related to W.C. Houchin Corp. Petitioners and respondent stipulated the treatment of several adjustments in the notices of deficiency issued to W.C. Houchin Corp. for the year 1998 and to William and Josephine Houchin for the year 1999 if the Court finds for respondent with regard to the recognition of income by W.C. Houchin Corp. in 1998.

Josephine Houchin resided in Lynn Haven, Florida, at the time they filed their petition. Petitioner W.C. Houchin Corp.'s principal place of business was in Colorado at the time the petition was filed.

W.C. Houchin Corp. was incorporated in Texas in 1987 as a C Corporation. William Houchin conveyed personal and real property located in Huerfano County, Colorado (Huerfano property), including "all oil, gas and other minerals", to W.C. Houchin Corp. on August 28, 1987. W.C. Houchin Corp. converted to an S Corporation effective January 1, 1999. William Houchin is the president and sole shareholder of W.C. Houchin Corp. From 1987 to 2000, W.C. Houchin Corp. used the accrual method of accounting.

The Huerfano property conveyed to W.C. Houchin Corp. was subject to a carbon dioxide gas lease to Atlantic Richfield Co. (ARCO). The gas lease permitted ARCO to enter onto the Huerfano property and explore for oil and gas. The gas lease also permitted ARCO to produce any discovered carbon dioxide gas and lay pipelines to transport the gas. The terms of the lease required ARCO to pay a royalty when any discovered carbon dioxide gas was sold. The 1987 transfer by William Houchin to W.C. Houchin Corp. included the rights to receive the royalties paid by ARCO under the lease.

At a certain period prior to the years in issue, ARCO discovered carbon dioxide gas under the Huerfano property and transported the gas via pipeline from Colorado into west Texas. ARCO sold the gas to oil producers in west Texas. The oil producers injected the carbon dioxide gas into oil reservoirs via injection wells to increase oil production from nearby producing wells.

The Huerfano property gas lease was part of a group of gas leases consolidated into the "Sheep Mountain Operating Unit Area". That group of leases on adjacent land determined the share of royalties the landowners received for carbon dioxide gas produced from the common reservoir beneath the adjacent lands.

The leases required ARCO to pay the Sheep Mountain Operating Unit Area owners, including W.C. Houchin Corp., the owners' royalties. In 1981, Exxon purchased a 50-percent interest in carbon dioxide production from the Sheep Mountain Operating Unit Area. Exxon, as a result of the purchase, was required to reimburse ARCO for 50 percent of the royalties paid for the carbon dioxide gas produced.

On July 14, 1995, ARCO filed a complaint in the U.S. District Court for the District of Colorado against several carbon dioxide gas lessees, including William Houchin.[4] In the

_____

[4] We note that "William C. Houchin" is the named defendant in the civil action brought by ARCO. W.C. Houchin Corp.,
(continued...)

complaint, ARCO requested a declaratory judgment declaring as proper the deductions that decreased the royalties paid to the gas lessees. The disputed deductions were related to the cost of transporting the carbon dioxide gas from Colorado to west Texas. The defendant gas lessees, including William Houchin, counterclaimed against both ARCO and Exxon for, inter alia, alleged unpaid royalties for past production as a result of improper transportation deductions (transportation portion) and allegedly undervaluing the carbon dioxide gas sold (valuation portion) for purposes of computing the royalties paid to the lessees.

The U.S. District Court for the District of Colorado dismissed Exxon from the case. However, Exxon was obligated to pay 50 percent of any royalties determined to be due in the case, and therefore Exxon remained involved in the resolution of the lawsuit.

In November of 1997, the court granted defendants' motion for summary judgment on the transportation portion of the case. The parties engaged the services of an arbitrator and commenced

---

[4](...continued)
however, received the rights to "all oil, gas and minerals" related to the Huerfano property prior to the filing of ARCO's civil action. The parties negotiated and settled the case with William Houchin. W.C. Houchin Corp., however, is the owner of the royalty income from the gas lease and reported the settlement agreement on its 1999 U.S. Income Tax Return for an S Corporation.

settlement negotiations in January of 1998.  In April of 1998, the court granted ARCO's motion to exclude the defendants' expert witness testimony that related to the valuation portion of the case.

ARCO and Exxon desired to obtain simultaneously a settlement agreement with William Houchin and a codefendant.  By letter dated October 28, 1998, William Houchin's attorney, Gary C. Davenport, communicated to him a combined $8 million settlement offer from ARCO and Exxon separately made to both William Houchin and the codefendant.  On October 29, 1998, William Houchin and the codefendant separately accepted the combined settlement offer of $8 million, to be divided between William Houchin and the codefendant.

On December 18, 1998, William Houchin received the settlement agreement for his separate settlement.  The settlement agreement contains the following language:

> 3.  Payment.  In consideration of the release and agreements described above, ARCO and Exxon agree to wire transfer to Houchin's attorneys * * * a total of $8 million ($8,000,000.00) on January 4, 1999 in full and complete compromise and satisfaction of his Counterclaim that his Royalty has been underpaid and in full and complete compromise and satisfaction of the [codefendant's] Claim that its Royalty has been underpaid. * * *
>
>    *     *     *     *     *     *     *
>
> 18.  Counterparts.  This Settlement Agreement may be executed by the Settling Parties in any number of counterparts, each of which shall be deemed an original instrument, but all of which together shall constitute

one and the same instrument. This Settlement Agreement shall become effective immediately upon execution by all the Settling Parties.

19. Applicable Law. This Settlement Agreement shall be interpreted, construed and enforced in accordance with the laws of the State of Colorado.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of December 21, 1998.

Petitioner William Houchin executed the settlement agreement on December 21, 1998. The codefendant executed a separate settlement agreement on December 21, 1998. G.B. Weeden, representative of Exxon, executed both settlement agreements on December 22, 1998. T.L. Holland, Attorney-in-Fact for ARCO, executed both settlement agreements on December 31, 1998.

The law firm that represented William Houchin in the negotiations with ARCO and Exxon, namely, McGloin, Davenport, Severson, & Snow, calculated William Houchin's portion of the combined $8 million settlement as $6,145,315 and so informed him in a document dated December 31, 1998, entitled "Houchin Disbursement Statement". On January 4, 1999, McGloin, Davenport, Severson, & Snow received by wire transfer the $8 million settlement amount. On January 5, 1999, McGloin, Davenport, Severson, & Snow sent William Houchin a check in the amount of his net settlement proceeds. On January 6, 1999, William Houchin received the settlement proceeds check. On January 12, 1999, McGloin, Davenport, Severson, & Snow, and ARCO signed and filed a

stipulated dismissal with prejudice.  On February 3, 1999, the U.S. District Court for the District of Colorado dimissed William Houchin from the lawsuit with prejudice.

The parties stipulated that the correct amount of income received by W.C. Houchin Corp. from the settlement agreement with Exxon and ARCO for the purpose of calculating any income adjustment is $6,145,315.[5]

Petitioner W.C. Houchin Corp. did not report the royalty income received from the settlement on its 1998 corporate income tax return.  Petitioner W.C. Houchin Corp. reported the royalty income and related settlement expenses on its corporate return for 1999, the first year for which the corporation elected S corporation status.  Petitioners William and Josephine Houchin reported the royalty income received from the settlement, among other settlement-related items, as flowthrough items on their 1999 individual Federal income tax return.

OPINION

I.  Settlement-Related Deficiency

   A.  Burden of Proof

Section 7491(a) places the burden of proof on the Commissioner with regard to certain factual issues relevant to ascertaining liability for tax in the case of Court proceedings arising from examinations commenced after July 22, 1998.

---

[5]  See supra note 4.

Petitioners, however, do not assert or show that section 7491(a) shifts the burden of proof to respondent. Therefore, petitioners bear the burden of proof. Rule 142(a); see also Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979) (noting that the Commissioner is afforded much latitude for discretion and the taxpayer bears a heavy burden of proof with respect to accounting issues).

    B.   Parties' Assertions and Relevant Internal Revenue Code Sections and Regulations

Respondent asserts that W.C. Houchin Corp. should recognize the settlement payment from ARCO and Exxon as income in 1998. W.C. Houchin Corp. was a C corporation in 1998. Petitioners maintain that the settlement payment should be recognized in 1999 when W.C. Houchin Corp. elected to become an S corporation.

Section 451(a) provides that the amount of any item of income shall be included in gross income for the taxable year in which received by the taxpayer unless, under the method of accounting used in computing taxable income, the amount is properly accounted for as of a different period. Under the accrual method of accounting, income is to be included for the taxable year when (1) all events have occurred that fix the right to receive the income and (2) the amount of the income can be determined with reasonable accuracy. Secs. 1.446-1(c)(1)(ii), 1.451-1(a), Income Tax Regs. W.C. Houchin Corp. was an accrual method taxpayer in 1998 and 1999.

1.  All-Events Test

    a.  Application to W.C. Houchin Corp.

Under the all-events test, the fixed right to receive the income is controlling and not whether there has been actual receipt of the income. Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 184-185 (1934). Typically, all the events that fix the right to receive income have occurred when the income is: (1) Actually or constructively received, (2) due, or (3) earned by performance. Schlude v. Commissioner, 372 U.S. 128 (1963); Johnson v. Commissioner, 108 T.C. 448, 459 (1997), affd. in part, revd. in part and remanded on another ground 184 F.3d 786 (8th Cir. 1999). When the right to receive a set amount of income becomes fixed, the income ordinarily accrues. Spring City Foundry Co. v. Commissioner, supra at 184-185; Resale Mobile Homes, Inc. v. Commissioner, 91 T.C. 1085, 1093 (1988), affd. 965 F.2d 818 (10th Cir. 1992). An accrual basis taxpayer must report income in the year the right to such income accrues, despite the necessity for mathematical computations or ministerial acts. Contl. Tie & Lumber Co. v. United States, 286 U.S. 290, 295-297 (1932); Dally v. Commissioner, 227 F.2d 724 (9th Cir. 1955), affg. 20 T.C. 894 (1953); Charles Schwab Corp. & Subs. v. Commissioner, 107 T.C. 282, 292 (1996), affd. 161 F.3d 1231 (9th Cir. 1998); Resale Mobile Homes, Inc. v. Commissioner, supra at 1095.

The terms of the Houchin settlement agreement dictate when the right of W.C. Houchin Corp. to the income accrued.[6]  The settlement agreement states that "the Settling Parties have executed this settlement Agreement as of December 21, 1998." Petitioner William Houchin executed the settlement agreement on December 21, 1998.  The codefendant executed a separate settlement agreement on December 21, 1998.  Representatives of Exxon and ARCO executed both settlement agreements on December 22 and 31, 1998, respectively.  Paragraph 18 states:  "This Settlement Agreement shall become effective immediately upon execution by all the Settling Parties."  The settlement agreement was effective by December 31, 1998.  Therefore, W.C. Houchin Corp.'s right to the settlement agreement income became fixed in 1998.

The settlement agreement states that "ARCO and Exxon agree to wire transfer to Houchin's attorneys * * * a total of $8 million ($8,000,000) on January 4, 1999 in full and complete compromise and satisfaction of * * * [Houchin's] Counterclaim that his Royalty has been underpaid and in full and complete compromise and satisfaction of the [codefendant's] Claim that its Royalty has been underpaid".  For purposes of the all-events

---

[6]  The codefendant had a separate settlement agreement and was not a party to the "Houchin" settlement agreement.  Even so, the codefendant executed his settlement agreement on Dec. 21, 1998.

test, once the settlement agreement became effective, as it did on or before December 31, 1998, it fixed W.C. Houchin Corp.'s right to receive the settlement amount, regardless of the agreed upon delivery date. Therefore, the all-events test was satisfied in 1998.

b. <u>Petitioners' Arguments and Applicable Law</u>

Petitioners argue that, under Colorado law, a contract must be signed and delivered to take effect. Whether parties have entered into a contract is a question of fact. <u>S. Colo. MRI, Ltd. v. Med-Alliance, Inc.</u>, 166 F.3d 1094 (10th Cir. 1999).

The settlement agreement states that "the Settling Parties have executed this Settlement Agreement as of December 21, 1998" and that "This Settlement Agreement shall become effective immediately upon execution by all Settling Parties". As all parties signed the agreement on or before December 31, 1998, and the agreement states that it is effective in 1998, we find that all provisions of the settlement agreement were effective and accordingly in force in 1998. Assuming arguendo that delivery is required for a contract to take effect under Colorado law and that delivery did not occur until 1999, the above-mentioned provisions of the settlement agreement cause the effective date of the contract to be in 1998, and therefore the all-events test was satisfied in 1998.

## 2. Amount of Income

The amount of income received by William Houchin,[7] on behalf of his corporation, from ARCO and Exxon in satisfaction of his counterclaim that his royalties were underpaid is determined by the terms of the settlement agreement. The settlement agreement details an $8 million amount transferred to William Houchin and a codefendant in satisfaction of their counterclaims that their royalties were underpaid. The calculation detailed on the "Houchin Disbursement Statement" dated December 31, 1998, shows that William Houchin's portion of the total settlement was $6,145,315. In the notice of deficiency issued to W.C. Houchin Corp. for the year ending December 31, 1998, respondent determined a $6,145,315 adjustment to income for "ARCO settlement-royalty income". The parties stipulated that the correct amount of income received by William Houchin from the settlement agreement with ARCO and Exxon is $6,145,315. The amount of income due William Houchin could be determined with reasonable accuracy by the end of 1998.[8]

## C. Conclusion

We hold that because the all-events test was satisfied in 1998 and the amount of income could be determined with reasonable accuracy as of the end of 1998, the settlement agreement income

---

[7] See *supra* note 4.

[8] See *supra* note 4.

of $6,145,315 is includable in W.C. Houchin Corp.'s gross income for the 1998 taxable year.

## II.  Section 6662(a) Accuracy-Related Penalty

### A.  Burden of Production

Section 7491(c) provides that the Commissioner will bear the burden of production with respect to the liability of any individual for additions to tax and penalties.  "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount".  Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner has done so, the burden of proof is upon the taxpayer to establish reasonable cause and good faith.  Higbee v. Commissioner, supra at 449.  W.C. Houchin Corp. is not an individual; accordingly, section 7491(c) does not apply to its case.  See NT, Inc. d.b.a. Natures Touch v. Commissioner, 126 T.C. 191 (2006); Beiner, Inc. v. Commissioner, T.C. Memo. 2004-219.

### B.  Penalty Analysis

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax (1) attributable to a substantial understatement of tax or (2) due to negligence or disregard of rules or regulations.  Sec.

6662(b).  The term "understatement" means the excess of the amount of tax required to be shown on a return over the amount of tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).  Sec. 6662(d)(2)(A). Generally, an understatement is a "substantial understatement" when the understatement exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on a return. Sec. 6662(d)(1)(A).  An understatement is a "substantial understatement" for a C corporation when the understatement exceeds the greater of $10,000 or 10 percent of the amount of tax required to be shown on a return.  Sec. 6662(d)(1)(B).

Whether applied because of a substantial understatement of tax or negligence or disregard of rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant. See id.

### 1. William C. and Josephine Houchin

Respondent determined an accuracy-related penalty under section 6662(a) of $53,532 with regard to petitioners William C. and Josephine Houchin's 1999 Federal income tax.[9]  It is clear from the record that William and Josephine Houchin provided their accountant, Jim Garner, all records and information necessary to prepare their 1999 Federal income tax return.  Mr. Garner conversed with William and Josephine Houchin to determine the correct treatment of the settlement agreement proceeds.  William and Josephine Houchin relied upon Mr. Garner to prepare the return, and Mr. Garner was aware of William and Josephine Houchin's reliance.  It is clear from the record that William and Josephine Houchin reasonably relied in good faith on their accountant.  We conclude that for the year in issue William and Josephine Houchin had reasonable cause and acted in good faith as to any underpayment resulting from the settlement agreement proceeds.  Accordingly, we hold that William and Josephine Houchin are not liable for the penalty pursuant to section 6662(a).

---

[9]  Because we find for respondent with regard to the recognition of income by W.C. Houchin Corp. in 1998, we need not decide the deficiency issued to William and Josephine Houchin for the year 1999 as petitioner and respondent stipulated the treatment of the adjustments asserted in the notice of deficiency.

2. <u>W.C. Houchin Corp.</u>

Respondent determined a tax deficiency of $1,211,643 for 1998.

William Houchin provided the accountant that prepared W.C. Houchin Corp.'s Federal income tax return, Jim Garner, all records and information necessary to prepare its 1998 Federal income tax return. Mr. Garner conversed with William Houchin to determine the correct treatment of the settlement agreement proceeds. William Houchin relied upon Mr. Garner to prepare the return, and Mr. Garner was aware of Mr. Houchin's reliance. It is clear from the record that W.C. Houchin Corp. reasonably relied in good faith on its accountant. Consequently, we conclude that for 1998 W.C. Houchin Corp. had reasonable cause and acted in good faith as to any underpayment resulting from the settlement agreement proceeds. Accordingly, we hold that W.C. Houchin Corp. is not liable for the penalty pursuant to section 6662(a).

In reaching our holding herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.