CARROLL FURNITURE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13600.    Promulgated December 27, 1950.

*F. E. Hagler, Esq.*, and *Taylor Malone, Jr., Esq.*, for the petitioner. *S. Earl Heilman, Esq.*, for the respondent.

OPINION.

LEECH. *Judge:* This proceeding involves excess profits tax deficiencies for the years 1940, 1941, and 1943, in the respective amounts of

$8,165.26, $26,666.05 and $5,260.68, not all of which amounts are in controversy.

The issues are:

1. Whether the amount of $14,091.34, received by petitioner in 1940 as proceeds from a use and occupancy insurance contract which insured against actual loss sustained of profits in the business, is includible in excess profits net income for that year.

2. Whether, on the accrual system of accounting, the gain realized in 1941 and 1943 from collections on purchased accounts receivable constitutes income accruable in the year the accounts were purchased or the years when collected.

3. Petitioner having elected under section 736 (a) of the Internal Revenue Code to compute its income from installment sales for excess profits tax purposes on the accrual basis, in computing the unused excess profits credit to be carried to the year 1941 from the year 1942, is the deduction for charitable contributions in the year 1942 limited to 5 per cent of its net income computed on the accrual basis?

The case was submitted on a stipulation of facts and certain admissions contained in the pleadings. The facts as stipulated are so found.

Petitioner is a Georgia corporation having its principal place of business at 122 Whitehall Street, S. W., Atlanta, Georgia. Its returns for the periods involved were filed with the collector of internal revenue for the district of Georgia.

During the taxable years petitioner was engaged in the retail furniture business and regularly made sales of personal property under the installment plan. It became qualified to elect, and did elect, to compute its income for excess profits tax purposes pursuant to section 736 (a) of the Internal Revenue Code.

In 1940 petitioner received the sum of $14,091.34 as proceeds from an insurance company under the provisions of a use and occupancy insurance contract which insured against actual loss sustained of profits in the business. In computing its excess profits net income for the year 1940 petitioner excluded as abnormal income the sum of $14,091.34. Respondent did not include such sum in his deficiency notice for 1940, but alleged in his amended answer that such amount was includible in excess profits net income for that year.

On June 28, 1941, petitioner purchased for cash two sets (or "groups") of accounts receivable of Matthews Furniture Co. of Atlanta, Georgia, a separate and unrelated concern which had discontinued business. The face value of the purchased accounts receivable was $229,373.66, of which amount the sum of $221,351.34 is includible in "Group A" and $8,022.32 in "Group B." The total amount paid for these accounts was $178,765.76, of which $177,081.07 was paid for those in "Group A" and $1,684.69 for those in "Group B." Thus the ac-

counts in "Group A" were purchased for 80 per cent of face value and those in "Group B" were purchased for 21 per cent of face value.

No part of collections in cash and value of repossessed goods on the purchased accounts was included in excess profits net income by petitioner.

In his notice of deficiency the respondent added to petitioner's excess profits net income for the year 1941 the total amount of $22,296.83 as income realized through collection of purchased accounts, not included in income reported. This amount represents the excess of the collections in cash and the value of goods repossessed in 1941 on the purchased accounts over and above the purchase price of the accounts "collected" in that year.

In his notice of deficiency the respondent added to petitioner's excess profits net income for the year 1943 the total amount of $2,565.52 as income realized through collection of purchased accounts, not included in income reported. This amount represents the excess of the collections in cash and the value of goods repossessed in 1943 on the purchased accounts over and above the purchase price of the accounts collected in that year.

In computing the unused excess profits credit to be carried back from 1942 to 1941, the respondent disallowed, for excess profits tax purposes, a portion of the amount claimed as a deduction for contributions, on the ground that the deduction was limited to 5 per cent of petitioner's income computed on the accrual basis.

The first issue is whether the sum of $14,091.34 received by petitioner in 1940, as proceeds from a use and occupancy insurance contract which insured against actual loss sustained of profits in the business, is includible in excess profits net income for that year.

In filing its excess profits tax return for 1940 petitioner elected, under section 736 (a) of the Internal Revenue Code, to compute income on the accrual basis for excess profits tax purposes, but did not include the amount of $14,091.34. The respondent did not include the amount of $14,091.34 in excess profits net income in 1940 in determining the deficiency stated in the deficiency notice, but in his amended answer alleges that such amount is includible in excess profits net income for that year. Petitioner concedes that the amount of $14,-091.34 is includible in its gross income for normal tax purposes. *International Boiler Works Co.*, 3 B. T. A. 283; *Miller* v. *Hocking Glass Co.*, 80 Fed. (2d) 436, certiorari denied, 298 U. S. 659. Petitioner argues that the amount of $14,091.34 is not includible in its excess profits net income for 1940 because it is abnormal income within the purview of section 721 (a) (1) of the Code. Since the issue of abnormality is raised for the first time on brief and presents another issue not raised by the pleadings, it can not be considered. *John Gerber*, 44 B. T. A. 26; *Warner G. Baird*, 42 B. T. A. 970; *Drawoh*,

*Inc.*, 28 B. T. A. 666; *Commissioner* v. *Sussman*, 102 Fed. (2d) 919. Furthermore, this record reflects no fact or circumstance indicating that such income is abnormal within the provisions of section 721 (a) (1), *supra.* The respondent's contention that the sum of $14,-091.34 is includible in computing petitioner's excess profits net income for 1940 is, therefore, sustained.

The second issue is whether, on the accrual system of accounting, the gain realized in 1941 and 1943 from collections on purchased accounts receivable constitutes income accruable in the year the accounts were purchased or the years when collected. In filing its excess profits tax returns for 1941 and 1943 on the accrual basis, pursuant to section 736 (a), Internal Revenue Code, petitioner did not include such gain in its excess profits net income. Petitioner contends that the undisputed amounts are properly excludible as abnormal income under section 721 (a) (1) of the Code. Petitioner appears to have raised this issue for the first time on brief. Since the issue of abnormality raises another issue not framed by the pleadings, it can not be considered. See discussion and authorities cited in connection with the issue of abnormality with respect to the first issue decided herein.

Petitioner contends, in the alternative, that as the assets represented by the accounts receivable purchased were rights to receive income, the gain is accruable only in the year of purchase and not in the years the collections are made.

Petitioner's theory overlooks the fundamental that gain does not represent taxable income either upon the accrual or cash or installment basis until "realized" on sales or exchanges of property. The gain is then realized and must be included under an accrual system of accounting even if the actual receipt of payment is postponed. No gain or loss was realized by the purchase of the accounts receivable for cash in the year 1941. Realization of gain or loss would occur upon the sale or disposition of the accounts receivable, or, as in the instant case, in 1941 and 1943 when collections were made.

The above rule is so well established by repeated decisions of the courts that petitioner's contention justifies little discussion. In *Palmer* v. *Commissioner*, 302 U. S. 63, the rule is thus stated:

By §§ 111, 112 and 113 of the Revenue Act of 1928, profits derived from the purchase of property, as distinguished from exchanges of property, are ascertained and taxed as of the date of its sale or other disposition by the purchaser. Profit, if any, accrues to him only upon sale or disposition, and the taxable income is the difference between the amount thus realized and its cost, less allowed deductions. It follows that one does not subject himself to income tax by the mere purchase of property, even if at less than its true value, and that taxable gain does not accrue to him before he sells or otherwise disposes of it. Specific provisions establishing this basis for the taxation of gains derived from purchased property were included in the 1916 and each subsequent revenue Act and accompanying regulations.

In *Elverson Corp.* v. *Helvering*, 122 Fed. (2d) 295, Judge Learned Hand very clearly stated the rule and analyzed the difference between a sale or exchange as effecting a realization of gain and the mere acquisition of property for cash at a price below its value. He said:

* * * Whenever anyone surrenders a thing of value for another thing of value, the surrender will for tax purposes ordinarily close the transaction by which he acquired the thing surrendered, and normally he will "realize" a gain or loss. For example, if he exchanges property for property, he will close the transaction by which he obtained the property which he transfers, and the "amount realized" will be the market value of the property he receives. § 111 (b). But the transaction will still remain open as to the property which he receives for as long as he retains it. When one buys property for cash, it might have been argued that in theory he too "realizes" a gain upon the cash if the property received has a value greater than the cash; but that would have involved the premises that there had been an increase in the value of the cash, "realized" by purchase, and that would have done great violence to our notions about money. Hence the doctrine that a cash purchase is always "unrealized" gain. * * *

Hence it is clear that petitioner realized no gain on the purchase for cash of the accounts receivable, but realized gain through collections upon the accounts purchased in the years collections were made. On this issue the respondent is sustained.

The final issue presented is whether, since petitioner elected under section 736 (a) of the Code to compute its income from installment sales for excess profits tax purposes on the accrual basis, in computing its unused excess profits credit to be carried to the year 1941 from 1942, the deduction for charitable contributions in the year 1942 is limited to 5 per cent of its net income computed on the accrual basis.

We think this question must be answered in the affirmative, on the authority of *Leo Kahn Furniture Co.*, 15 T. C. 918, where the same issue was presented. We there held, with respect to a taxpayer who had elected, pursuant to section 736 (a) of the Code, to compute its net income for excess profits tax purposes on the accrual basis, that the amount of the deduction for contributions under section 23 (q) is limited to 5 per cent of its net income computed on the accrual basis for excess profits tax purposes.

Other issues involved are either covered by admissions contained in the pleadings or by stipulation of the parties.

*Decision will be entered under Rule 50.*