Herman Weinberger v. Commissioner.
Weinberger v. Commissioner
Docket No. 20553.
United States Tax Court
T.C. Memo 1955-80; 1955 Tax Ct. Memo LEXIS 258; 14 T.C.M. (CCH) 262; T.C.M. (RIA) 55080; April 7, 1955
*258 Taxpayer was in the business of buying cattle for slaughter and selling the dressed meat at wholesale. He did not keep a regular set of accounting records, and his return was prepared on the basis of bank deposits, cancelled checks, bills and receipts. The respondent increased petitioner's sales for the taxable year from $267,376.02, as reported, to $392,276.23, on the theory that petitioner's cost of goods sold amounted to only 65 per cent of sales, and that petitioner realized a gross profit of 35 per cent on sales. Pertinent O.P.A. ceiling prices allowed a gross profit on sales of less than 6 per cent. Petitioner sold a substantial part of his meat to the armed services, at ceiling prices, and it did not appear that he sold any meat at prices higher than the legal maximum. Held, on the facts, respondent's action in increasing petitioner's sales was arbitrary and erroneous. Petitioner's sales and the allowable amounts of certain deductions determined. 2. Petitioner reported income for the fiscal year beginning May 1, 1944, and ending April 30, 1945. During the taxable year, he was entitled to receive Government subsidies based on the amount and grade of meat slaughtered each *259 month. The amount and formulas for calculating the subsidies were specified in Government regulations. Petitioner's subsidy claims for slaughtering performed in January and February 1945 were paid in April 1945, and his claims for slaughtering performed in March and April 1945 were paid in May and July 1945. Held, on the facts, petitioner reported in gross receipts for the taxable year the subsidy payments for January and February; held, further, the petitioner was required to report income on the accrual method, and the subsidy payments for March and April 1945 were includible in income for the taxable year although not received until after the close of the taxable year. 3. Allowable deductions determined. 4. Negligence penalty under section 293(a), 1939 Code, sustained. Held, that the issue is not before the Court because not raised by pleadings. William W. Whiting, Esq., and Richard Steel, Esq., for the petitioner. John J. Madden, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined a deficiency in income tax in the amount of $110,151.70 for the fiscal year ended April 30, 1945, to which he added a 5 per cent negligence penalty, in the amount of $5,507.59, under the provisions of section 293(a) of the 1939 Code. The questions to be decided are whether the respondent properly increased the amount of sales of petitioner's business by use of a 35 per cent markup of gross profit; whether subsidy payments from the Reconstruction Finance Corporation accrued to and were includible in income of petitioner in the taxable year; and whether *261 the petitioner is entitled to deductions for various alleged business expenses and charitable contributions. Findings of Fact The petitioner is a resident of New York City, New York. He filed his return for the fiscal year commencing May 1, 1944, and ending April 30, 1945, with the collector for the third district of New York. During the taxable year, the petitioner conducted a sole proprietorship business in New York City. He carried on a business of selling beef and veal at wholesale; he manufactured bologna, and commencing in December 1944, he also engaged in the business of custom killing of livestock. The petitioner carried on his business in a small shop; he did practically all of the work involved in his various business operations. Although petitioner was regarded, in the trade, as carrying on a business of custom killing of livestock, he did not perform the slaughtering operations himself. This aspect of his business involved buying cattle on the hoof, engaging and paying for the services of a slaughter-house, and selling the dressed meat. As part of the compensation for his services, the slaughter-house was permitted to keep the skins and hides of the cattle which were *262 slaughtered. During the taxable year, petitioner had between 40 and 50 customers who were in either the Kosher delicatessen or retail meat business. The petitioner went out of business in the early part of 1947. The petitioner immigrated to the United States from Germany in 1937, and became a naturalized citizen in 1943. He received limited education in Germany, where he attended the public school. He had no other education. He was drafted and served in the United States Army during part of 1943. He was discharged at the end of 1943. During the taxable year, the petitioner was unmarried. He lived with his mother and brother in an apartment, and paid one-half of the $48 rent, or $24 per month. The petitioner devoted all of his time to his business during the taxable year. He regularly worked about 6 1/2 days a week, from 16 to 18 hours a day. Petitioner had no regular employees, but hired workers from time to time. The petitioner kept the records of his business without the assistance of a bookkeeper or an accountant. He knew very little about bookkeeping or accounting. His return for the taxable year was prepared for him by an accountant. Petitioner maintained a bank account at *263 the York Avenue Branch of the Corn Exchange Bank Trust Company of New York. He paid practically all his bills by check, and paid some expenses in cash. He did not maintain any regular set of accounting books. He had practically no bookkeeping and accounting records. He relied upon his bank statements, cancelled checks, and bills and invoices, in keeping track of the receipts and disbursements of his business. Petitioner's return for the taxable year was prepared by Herman Judell. The return reported total receipts in the amount of $267,376.02, and net profit in the amount of $5,993.07, which amounts were arrived at in the following way: Cost of goods sold
Inventory at beginning of year
$ 1,500.00
Goods bought for sale
261,473.70
Total
$262,973.70
Inventory end of year
8,000.00
Net cost of goods sold
$254,973.70
Gross profit
12,402.32
Business deductions
Wages
$ 1,698.14
Depreciation
650.00
Rent, repairs, etc.
4,061.11
$ 6,409.25
Net profit
5,993.07
There were reported in petitioner's return, also, capital gain of $959.66, and dividends and interest in the amount of $245, or a total income from all sources in the amount of $7,197.73. The petitioner *264 took deductions for contributions, interest, taxes, and traveling expenses in the total amount of $956.93. The net income reported amounted to $6,240.80. The expenses of operating petitioner's business, which are set forth in Schedule G of petitioner's return, are as follows: Supplies
$ 606.50
Rent
469.00
Telephone
207.10
Electricity
274.77
Rabbi
673.15
Accrued expenses
500.00
Miscellaneous expenses
623.08
Automobile expense
231.19
Insurance
113.25
Tax
233.07
Accountant
30.00
Trucking
1,100.00
Total
$5,061.11 These expenses were incorrectly added on the return, and a deduction was taken for only $4,061.11, or $1,000 less than the actual total. In his return, the petitioner took a dependency credit for his mother of $500. Among the deductions listed on page 4 of his return were contributions, in the amount of $300; taxes, in the amount of $95; and travel and entertaining expenses, in the amount of $450. In determining the deficiency, the Commissioner disallowed the dependency exemption for petitioner's mother on the ground that it was not substantiated. He disallowed deductions in the amount of $3,620 as not substantiated, as follows: *265 Depreciation
$ 650
Miscellaneous expense
600
Accrued expenses
500
Trucking expense
1,100
Travel and entertaining
450
Contributions
250
Taxes
70 Also, the Commissioner increased sales in the amount of $124,891.21. In making this adjustment, the Commissioner gave the following explanation "Sales based on 35% gross
profit
$392,267.23
Sales reported
267,376.02
Increase in sales
$124,891.21"
The Commissioner also included in taxable income subsidy payments in the amount of $10,708.65. During the taxable year, there was a shortage of meat supplies, and the petitioner was greatly restricted in the sources from which he could purchase meat. In order to overcome the difficulty he was having in buying meat, the petitioner began to purchase cattle on the hoof from various mid-west livestock dealers in the latter part of November or the early part of December 1944. The cattle purchased by petitioner were shipped to a slaughter-house in New Jersey. At this time, there were Government regulations limiting the cost and the selling price of both cattle on the hoof and dressed meat. Under O.P.A. regulations, petitioner was classified as a wholesaler, *266 or jobber. He was required to file monthly reports of his purchases and sales with the Office of Price Administration and subdivisions of the War Food Administration. Under O.P.A. maximum price regulations, a wholesale meat dealer in the same business as the petitioner was limited to an average gross profit of about 1 1/4 cents per pound. This rate of profit averaged a little over 5 per cent of selling price. Certain regulations also required that a substantial portion of all slaughtered cattle, including the hind quarters, be sold to the armed forces at O.P.A. maximum prices. The petitioner complied with such regulations. The petitioner kept a book, in the style of a journal or a day book, in which he recorded the live weight, dressed weight, and the cost of the livestock which he purchased during the taxable year. He entered descriptions of the orders, and the total selling prices, of his sales to the armed forces. He also entered in this book the quantities of meat which he was required to set aside for sale to the armed forces. During the taxable year, the petitioner was entitled to receive monthly subsidy payments from the Defense Supplies Corporation or its successor, the *267 Reconstruction Finance Corporation, (hereinafter collectively referred to as the Reconstruction Finance Corporation or R.F.C.), for his slaughtering operations. The subsidies were based upon the amount and grade of meat slaughtered. Revised Regulation 3 of the Defense Supplies Corporation, 10 F.R. 4241, 32 C.F.R. 1945 Supp., 7003, as amended, specified the amount of subsidy per pound for the various grades of meat, and the formulas for calculating additions to and deductions from claims based on the cost of the slaughtered cattle. It was necessary for the petitioner to execute and file Government claim forms with the R.F.C. for subsidy payments. Petitioner filed claims for subsidy payments with the Reconstruction Finance Corporation for cattle slaughtered during every month from December 1944, through April 1945. The date and amount of petitioner's claims, and the date and amount of payment, are as follows: Date
Amount
Amount
Date of
Period Covered
Filed
Claimed
Paid
Disbursement
1/ 1/45-1/27/45
4/11/45
$2,012.86
$ 65.57
4/21/45
1/29/45-2/28/45
4/11/45
3,471.15
2,354.94
4/21/45
3/ 1/45-3/31/45
4/16/45
4,205.86
4,205.86
5/ 3/45
4/ 1/45-4/30/45
5/ 4/45
3,378.50
4,082.28
7/24/45
*268 The Reconstruction Finance Corporation made the above payments by Government checks payable to the petitioner. The first two checks, in the amounts of $65.57 and $2,354.94, were received by the petitioner and deposited to his credit in his bank account at the Corn Exchange Bank Trust Company prior to the close of the taxable year. The sum of these two checks, $2,420.51, was reported by him under gross receipts in his income tax return filed for the taxable year. The petitioner did not include in his income for the taxable year any part of the $8,288.14 received as subsidies after the close of the taxable year for slaughtering operations performed during March and April 1945. The Corn Exchange Bank Trust Company has destroyed all its records of the petitioner's account for the year in question. The following Government records have been destroyed pursuant to statute: (a) the income tax return of the petitioner for the fiscal year ended April 30, 1946; (b) the checks issued by the Reconstruction Finance Corporation to the petitioner representing subsidy payments during the taxable year at issue. The correct allowance for depreciation of machinery and a truck used in the petitioner's *269 business during the taxable year is $650. The petitioner paid $95 for sales taxes and made contributions to qualified charitable organizations in the amount of $100 during the taxable year. The petitioner expended $350 for travel expenses in connection with his business during the taxable year. The petitioner paid $1,100 for trucking services used in his business during the taxable year. The petitioner's gross receipts from sales, during the taxable year, including the $2,420.51 received as subsidy payments, did not exceed $268,476.02. Opinion Deductions and Credits: The Commissioner disallowed deductions of $600 for miscellaneous expenses and $500 for accrued expenses. The petitioner, in his petition, alleged that the respondent erred in disallowing the foregoing deductions. The petitioner did not introduce any evidence in support of these claimed deductions, and he does not make any claim for them on brief. Apparently, petitioner has abandoned these items. In any event, there is failure in proof. The respondent's disallowance of these deductions is sustained. The evidence supports the petitioner's claim for contributions in the amount of $100; taxes in the amount of *270 $95; traveling and entertaining business expenses in the amount of $350; and business trucking expenses in the amount of $1,100. It is held that the petitioner is entitled to deductions for the foregoing items. The Commissioner correctly disallowed $200 of the charitable contribution deduction taken on the return, and $100 of the deduction taken for alleged traveling and entertaining expenses. In his petition, the petitioner claimed that the respondent erred in disallowing a dependency credit for his mother. The petitioner has abandoned this issue. Negligence Penalty: The petition does not raise any issue involving the correctness of the respondent's addition to the deficiency of a 5 per cent negligence penalty under section 293(a) of the 1939 Code. On brief, the petitioner argues that he is not liable for the 5 per cent penalty prescribed for negligence or intentional disregard of rules and regulations. Apparently the petitioner does not understand that there is a well established rule that this Court will not consider issues which are not raised by the pleadings. Carroll Furniture Co., 15 T.C. 943, affd. 197 Fed. (2d) 718; Maltine Co., 5 T.C. 1265; *271 Mary W. Pingree, 45 B.T.A. 32; John Gerber Co., 44 B.T.A. 26. For this reason we will not consider the question of whether the petitioner is liable for the 5 per cent penalty. However, if we were to consider such issue, we would sustain the penalty. It is abundantly clear that the petitioner did not maintain adequate books and records for his business as he is required to do by regulations of the Commissioner. The foregoing disposes of miscellaneous and small issues. There are two other questions to be decided. The first question is whether the amount of petitioner's sales reported for the taxable year should be increased in the amount of $124,891.21, or by any other amount, to reflect actual receipts from sales. The respondent's agent was not satisfied with the evidence which the petitioner was able to present to show what his sales and receipts were during the taxable year. The petitioner had to rely upon bank statements, cancelled checks, bills, and invoices and memoranda, because he had not maintained even a simple set of accounting records. In this situation, the respondent's agent resorted to a method of reconstructing the gross amount of petitioner's *272 sales. The Commissioner's agent adopted the theory that petitioner's cost of merchandise amounted to 65 per cent of sales receipts. The agent, therefore, concluded that petitioner must have realized a gross profit of 35 per cent on total sales. The agent accepted the figure for cost of goods sold reported by the petitioner, $254,973.70, and by applying the 35 per cent gross profit theory, he increased petitioner's gross sales by $124,891.21. The respondent's determination is prima facie correct, and the petitioner had the burden of overcoming such prima facie correctness. All of the evidence has been carefully considered. It is concluded that the petitioner has established that the respondent's determination was erroneous. In the first place, the OPA maximum price regulations which were in effect during the taxable year, fixed the wholesale prices of dressed beef and veal at amounts which would yield a gross profit averaging 1.25 cents per pound, or an average gross profit of less than 6 per cent of sales. There is evidence which indicates that the petitioner sold goods at the lawful maximum prices in conformity with OPA regulations. The evidence shows that petitioner sold a substantial *273 portion of his goods to the Government for the armed forces, and that such sales were made in accordance with maximum price regulations. It appears also that the theory adopted by the respondent's agent was not founded upon any evidence that petitioner actually realized a profit of 35 per cent of gross sales. Upon the entire record, we must conclude that the method adopted by the Commissioner's agent involving the use of a gross profit percentage of 35 per cent was erroneous. The evidence does not support a finding that the petitioner's gross receipts during the taxable period were more than $268,476.02. This figure exceeds the amount reported in petitioner's return by $1,100. The petitioner conceded, in explanation of his business expense deductions, that he paid trucking expenses of $1,100 with cash from sales receipts, and that these receipts were not reflected in the gross receipts of $267,376.02 reported on his return. The next question is whether subsidy payments in the amount of $10,708.65 are includible in petitioner's income for the taxable year. This amount is the total of R.F.C. subsidies paid to petitioner for slaughtering of cattle owned by him during the taxable *274 year; two additional checks for the balance of $8,288.14 were issued to the petitioner after the close of the taxable year. The petitioner claims that the checks totaling $2,420.51 were received by him, and were deposited in his bank account during the taxable year, and that since he computed the amount of his gross receipts by reference to his bank deposits, he actually included the $2,420.51 in the gross receipts reported in his return. We shall deal with this contention first. Whether or not the petitioner included the sum in question in gross receipts in his return for the taxable year is a question of fact. The petitioner was unable to produce cancelled checks of R.F.C. showing that the $2,420.51 was deposited in his account during the taxable year because by the time this case came on for trial the R.F.C. checks in question had been destroyed. Also, petitioner did not present any bank deposit slips or bank statement showing a deposit in his bank account during the taxable year in the precise amounts of two checks, $65.57 and $2,354.94. The evidence shows that during April 1945, the month the checks were issued, petitioner's total bank deposits were $55,399.69. It is concluded *275 that petitioner's testimony should be accepted on this point because the evidence shows that it was the petitioner's custom to deposit other R.F.C. checks promptly, within 2 or 3 days after the date of the check. The petitioner's contention that he included the subsidy payments of $2,420.51 in gross receipts in his return for the taxable year is sustained. With respect to the balance of the R.F.C. payments, $8,288.14, the question is whether that amount is includible in petitioner's income during the taxable year. R.F.C. checks totaling the above amount were not received by the petitioner until after the taxable year. The respondent takes the position that petitioner should have reported his income on an accrual method of accounting; that all of the conditions were met during the taxable year which were a prerequisite to the petitioner's right to receive the subsidy payments in question; and that, therefore, on an accrual basis, the petitioner was required to include the subsidies of $8,288.14 in income for the taxable year. The petitioner does not deny that his right to the subsidy payments specified in Defense Supplies Corporation Revised Regulation 3 accrued during the slaughtering *276 periods for which the payments were made, namely, the last 2 months of the taxable year. Continental Tie & Lumber Co. v. United States, 286 U.S. 290; Commissioner v. Dumari Textile Co., 142 Fed. (2d) 847, affirming 47 B.T.A. 639; Cloverleaf Creamery Co. v. Davis, 97 Fed. Supp. 121. However, he contends that he properly reported the $8,288.14 in gross income for the succeeding taxable year on the cash basis; that he has paid income tax upon this amount of income; and that the respondent's determination, if sustained, results in double taxation of the same income. The respondent did not err in determining that the petitioner should have reported his income on an accrual basis. Merchandise was an income-producing factor in petitioner's business, and he was required to and did keep inventories. Regs. 111, sections 29.22(c)-1, 29.41-3(1). In such cases, an accrual method must be used to correctly reflect income. Regs. 111, section 29.41-(2). See Herberger v. Commissioner, 195 Fed. (2d) 293, certiorari denied, 344 U.S. 820. It is held that the respondent did not err in adding R.F.C. subsidies in the amount of *277 $8,288.14 to petitioner's income for the taxable year. The petitioner relies upon Commissioner v. Dwyer, 203 Fed. (2d) 522. It is distinguishable from this case on its facts. If petitioner in fact reported the payments of $8,288.14 in income for the fiscal year ended April 30, 1946, and has paid tax thereon, the result reached here appears to be harsh. He may, of course, pursue such relief as is available to him to obtain an adjustment of his income tax liability for 1946, or a refund of overpayment, if any, of tax for 1946. [1]
Decision will be entered under Rule 50. Footnotes
1. Adjustment for the year ending April 30, 1946, to eliminate the alleged double taxation of the payments in question, may not be barred by the statute of limitations, as suggested by petitioner. See sections 1311-1315 of the Internal Revenue Code of 1954, and section 3801 of the Internal Revenue Code of 1939↩.