THE PERMANENT HOMES LAND COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45156.   Promulgated November 25, 1932.

*W. C. Magathan, Esq., J. Marvin Haynes, Esq.,* and *C. J. McGuire, Esq.,* for the petitioner.

*L. W. Creason, Esq.,* for the respondent.

OPINION.

BLACK: The question we have to decide in this proceeding is whether items of income aggregating $37,285.25 accrued to petitioner in 1926 so as to make them taxable for that year.

For the year 1924 and subsequent years, petitioner kept its accounts and made its income tax returns on the accrual basis. Petitioner contends, in the first place, that the items constituting the $37,285.25 were paid to it in 1926 as advance commissions, and that these commissions were not earned in 1926 and could not be earned until subsequent years and hence could not be properly accrued as income on petitioner's books in 1926 and were not taxable in 1926. Petitioner further contends, in the alternative, that, if it is wrong in the foregoing contention, then the items of income aggregating $37,285.25 are taxable to it in 1925, because it was in that year that its unequivocal right to receive such sums of money was fixed.

Respondent's contention is that the sums in question were received by the petitioner during the year 1926 in consideration for the cancellation of the agreement of August 30, 1924, and as such is taxable income in the year in which received. Respondent also contends that nothing accrued to petitioner in 1925 on account of these several con-

tracts mentioned in our findings of fact. We will discuss these respective contentions in their order.

Petitioner, in support of its first contention, cites the following statement approved by the Commissioner (Law Opinion 1086, C. B. I. 1, p. 87):

In order to be accruable in the taxable year for which return is made, a valid right to income must have arisen or existed in that year, which is enforceable on the date the income is due. If, however, the right to the amount is contingent upon the happening of some future event, there is no certainty that it will be paid or will accrue. In this event no income accrues from a fixed and determinable source, and no right to anything arises or exists in the taxable year which can be accounted for as income under any system of accounting.

So say we. This rule was recently approved in substance by the court in *Commissioner* v. *Southeastern Express Co.*, 56 Fed. (2d) 600. In that case the court held that a taxpayer can not, under the accrual system, accrue items of income or items of expense which are uncertain in receipt. Says the court: "A mere contingent claim * * * may never be sustained or realized. It is too uncertain in making up income tax returns." But, suppose that, before the taxpayer's contingent right to receive the income under the original contract has become fixed, the contract itself is altered and modified and it is agreed that he shall receive a sum certain, without regard to the contingent provisions of the former contract. What then? Is he to be permitted to carry such income on his books in suspense after his right to receive it has become fixed and after he does actually receive the money? We think not. Petitioner cites many authorities in support of its main contention, all of which we have carefully considered, but none of which we think are in point.

We see no gain in taking up these cited authorities and pointing out one by one why we do not think they are applicable to the facts in the instant case.

Undoubtedly, under the original contract which petitioner had with the East Shore Land Company, the only amount which it was entitled to accrue as a profit when it made a sale of lots was the 25 per cent commission which was to be paid it in the first instance when lots were sold. The additional agency commission or division of profits, whichever it may be called, which it was to receive after total sales had aggregated $400,000 was purely contingent upon sales reaching that point; and, unless and until total sales did aggregate $400,000, there was nothing for petitioner to accrue on its books as income on account of this particular clause of the contract.

But this original contract was terminated in 1925, by mutual agreement, on account of the need for refinancing the property which was being sold, and a new contract was entered into, carrying many of

the same provisions of the old contract and modifying and changing others. As an upshot of this new contract and the terminating of the old, it was determined and agreed in 1925 that petitioner, subject to certain conditions, should receive $36,789.36 of the proceeds of the new financing. Just what this was for is not made very clear by the evidence. Petitioner did not actually receive this amount until February 19, 1926, but, as we shall endeavor to point out, that makes no difference if petitioner's right to receive it became definite and unqualified in the year 1925.

In *Lichtenberger-Ferguson Co.* v. *Welch*, 54 Fed. (2d) 570, the court held that when the amount of compensation due the taxpayer from the Government on account of the cancellation of a war contract was definitely approved in August, 1919, it represented income on the accrual basis for 1919, even though payment of the claim was delayed until February, 1920. "Under the accrual system of accounting," said the court, "when an item is definitely ascertained as to its amount and acknowledged to be due, it has accrued." The court quotes from our opinion in *Clarence Schock*, 1 B. T. A. 528, as follows: "Under an accrual system of accounting, one accrues income and does not receive it. Under the receipts and disbursements basis method, one receives income and does not accrue it."

To the same effect is the recent decision of the Supreme Court in *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290. It does not matter that the taxpayer, as appears to be the case in the instant case, did not take the item into its accounting until 1926, if the income actually accrued in 1925, for, as we said in *Corn Exchange Bank*, 6 B. T. A. 158, "Bookkeeping entries are significant only as evidence or records of transactions and the legal effect of such transactions and the method employed in keeping books must be determined from the transactions themselves, and not merely from the book entries affecting them." So we hold that petitioner's contention, that this income in question can be held in suspense and rendered for taxation in some future year or years when the aggregate of sales has reached a certain named amount, is untenable. We find no support for such a theory either in the statutes or the decided cases.

Petitioner also contends in its brief that this $36,789.36 was not income in either 1925 or 1926, because it was a loan. We see no merit in that contention. Certainly, if the evidence showed that this $36,789.36 represented money which petitioner borrowed for use in its business, we would not hold that it represented income. Borrowed money does not represent income. But there is no evidence whatever that this sum represented money which petitioner had borrowed. To whom was the petitioner obligated to repay? No one. The money was borrowed by the East Shore Land Company

in the sale of its bonds and for which it was primarily liable. Petitioner was in no way obligated for the repayment of this loan or any part of it. So, whether the $36,789.36 is regarded as advance commissions, as petitioner primarily contends, or represents a sum received in payment for the cancellation of a contract, as respondent contends, it is income.

The only question is whether petitioner's right to receive this amount accrued in the prior year of 1925, or accrued in 1926, the same year in which it was paid. If the latter event is true, respondent is correct in taxing it in 1926. If, however, petitioner's right to receive this $36,789.36 became definite and fixed in 1925, then, under the authorities we have already cited, it is income for 1925 and not for 1926. There can be no question but that the amount which petitioner was to receive as a result of these refinancing transactions if and when they were completed, was definitely fixed in 1925 to the extent of $36,789.36.

But it is not enough that the parties definitely agree upon the amount. In order for it to be a proper accrual item of income, the obligation to pay the amount fixed must be definite and unequivocal. A promise to pay, if and when certain contingencies take place, is not sufficient to make an item accruable. And herein lies the defect in petitioner's alternative contention that it should be permitted to accrue this item as income in 1925.

It was agreed that the sum accorded to petitioner in the so-called disbursement agreement was to be paid out of the proceeds of the bond issue, and, if the bond issue failed to go through, there was no obligation to pay petitioner anything. This fact is shown by clause (5) of the " Disbursement Agreement " copied in our findings of fact.

Was this bond issue completed in 1925? We doubt it. The so-called disbursement agreement was dated December 23, 1925, and only a short time remained in that particular year to complete the bond issue. It is more reasonable to suppose that the approval of the legal matters connected with the bond issue by the attorneys and the completion of the sale of the bonds did not take place until in 1926. It was in that year, on February 16, that petitioner received the $37,285.25 in question. But at any rate we can not decide cases on uncertainties and suppositions. We must decide them on facts. The facts are that respondent in his determination of the deficiency has determined that this $37,285.25 was not only received by petitioner in 1926, but that it was income which accrued to petitioner in that year and in no other. When the Commissioner has determined that income accrued in a certain year, the burden is on the taxpayer to prove otherwise. *Leo M. Klein*, 20 B. T. A. 1057.

The stipulation contains the following clause: " These bonds were sold to the Union Mortgage Company as authorized in Article III of the agreement herein referred to as Exhibit " B " and as stated in the agreement herein referred to as Exhibit " C "." If this sale was completed in 1925, the stipulation should so state. We have no evidence which will justify us in holding that the bond transaction was completed in 1925. Until the attorneys had approved the legality of all the matters connected with the bond issue, there was no obligation on the part of the Union Mortgage Company to take the bonds and to credit the East Shore Land Company with the proceeds thereof and to pay petitioner the amount it was to receive. So far as the evidence we have before us shows, the obligation to pay petitioner the agreed sum was purely contingent in 1925.

Reviewed by the Board.

*Decision will be entered for respondent.*