George W. Reed and Ruth M. Reed v. Commissioner.
Reed v. Commissioner
Docket No. 777-62.
United States Tax Court
T.C. Memo 1963-173; 1963 Tax Ct. Memo LEXIS 171; 22 T.C.M. (CCH) 819; T.C.M. (RIA) 63173; June 24, 1963
*171 Alfred E. Holland, "J" St. Bldg., Sacramento, Calif., for the petitioners. John Hargrove, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners income tax for the taxable years 1951 and 1952 in the amounts of $104,646.75 and $14,409.76, respectively, and an addition to tax under section 294(d)(2) of the Internal Revenue Code of 1939 in the amount of $7,848.40 for the year 1951. A number of the issues raised by the pleadings have been disposed of by agreement of the parties. Petitioner does not contend that an addition to tax under section 294(d)(2) is improper but states that the amount thereof is dependent upon the disposition of the other issues herein, with which statement respondent agrees. The only issue for our decision is whether petitioners, accrual basis taxpayers, properly deferred to 1952 the accrual of construction fees arising from certain construction contracts completed in 1951 and properly deferred to 1953 the accrual of similar fees arising from certain contracts completed in 1952. Findings of Fact Some of the facts have been stipulated and are found accordingly. *172 Petitioners, husband and wife, residing in Sacramento, California, filed joint Federal income tax returns for the calendar years 1951 and 1952 with the district director of Internal Revenue at San Francisco, California. George W. Reed, hereinafter referred to as petitioner, was during the years in issue in the construction business in and around Sacramento, California. Petitioner's principal business, conducted as a sole proprietorship, was the construction of small, single-family residences on a mass production basis for owner-speculators who would sell the houses for profit. Petitioner kept his books and reported his income for Federal income tax purposes on an accrual method of accounting. Prior to 1950 the contracts made by petitioner provided that he would build for a fixed contract price. With the advent of the Korean hostilities and the resulting uncertainties in the availability and costs of labor and materials, petitioner found it advisable to change to a cost plus construction fee arrangement so as to shift the risk of work stoppages and increased labor and material costs to the owners. After meeting resistance on the part of the owners to this shift of risks to *173 them, petitioner developed a method of sharing part of these risks with the owners by making arrangements that his construction fee would be adjusted in the event this fee exceeded the owner's profit on the sale. During 1950 petitioner started construction of 1,029 houses. Of that number 589 were built on a fixed price basis and 440 on a cost plus basis. There were agreements for the adjustment of the construction fees to reflect the profits of the owners on 397 houses. Petitioner's construction fees were either substantially adjusted or eliminated on 218 houses. The total adjustments in construction fees on houses started during 1950 amounted to $70,520. The total of petitioner's profits from fixed price jobs and from contractor's fees received and retained on cost plus jobs amounted to $259,853 on the 1,029 houses started during 1950. During 1951 petitioner started construction of 498 houses, all of which were built on a cost plus a construction fee basis. There were agreements for the adjustment of the construction fees to reflect the profits of the owners on 333 houses. The construction fees were either substantially adjusted or eliminated on 174 houses. The total adjustments *174 in construction fees on houses started during 1951 amounted to $21,292. The total construction fees received and retained amounted to $156,739 on the 498 houses started during 1951. During 1952 petitioner started construction of 233 houses, all of which were built on a cost plus a construction fee basis. There were agreements for adjustment of construction fees to reflect the profits of the owners on 40 houses. However, petitioner ultimately received and retained the full fees on all 40 of these houses. In many instances one owner would not have enough lots in one locality for an efficient mass building operation. Petitioner on some such occasions would make separate contracts to build houses for several owners of lots in the locality under an arrangement that the costs of the general work would be pooled for all the houses and apportioned among the owners in relation to the number of square feet in the houses built for each owner or on a per house basis. Petitioner considered the construction of all the houses in such a pool as being one job. Petitioner maintained his records and reported his profit on a completed contract basis if there was just one contract, or on a completed *175 job basis if several contracts were pooled together into one job. However, where on any contract or job there were construction fee adjustment provisions calling for a reduction to petitioner's construction fee to reflect the profit of the owners on their sale, petitioner would not report the construction fee arising from the contract as income for income tax purposes even though construction was completed if a substantial number of the houses under the contract remained unsold by the owners at the end of the year. For the year 1951 petitioner deferred $122,013.75, representing construction fee income and a $5,000 item representing reimbursable construction costs, by charging an account entitled "Revenue from completed work" and crediting an account entitled "deferred income." The amount of $122,013.75 deferred by petitioner in 1951 represented fees from jobs numbered 5016, 5024, 5102, 5103, and 5105. Petitioner had completed construction on all these jobs in 1951. On jobs 5016, 5018, 5024, and 5102 petitioner deferred construction fees and reimbursable construction costs totalling $22,438.75, which had actually been paid to him before the end of 1951 and he now concedes this amount *176 accrued in 1951. The remaining $99,575 represents deferred construction fees arising from jobs 5103 and 5105. Job 5103 consists of 11 separate contracts, denominated 5103A through 5103K, entered into with 11 different people or groups of people. These contracts called for the construction of a total of 33 houses all completed in 1951, and construction fees of which $23,525, [1] was deferred from 1951 income. The following table shows as to each contract the completion date, number of sales in 1951, construction costs, construction fees, maintenance reserve, and payments made on the contracts during 1951 and 1952. 5103A
5103B
5103C
5103D
Total houses constructed
5
5
5
1
Last house completed
9/ 4/51
9/14/51
8/13/51
10/12/51
Houses sold by Dec. 31, 1951
1
1
None
1
Construction costs
$45,768.78
$53,056.73
$42,524.04
$8,498.52
Construction fees
3,500.00
4,250.00
3,500.00
700.00
Maintenance reserve
250.00
250.00
250.00
50.00
Total costs
$49,518.78
$57,556.73
$46,274.04
$9,248.52
Payments: Payments during 1951
$38,050.00
$41,533.91
$46,274.04
$9,248.52
Payments during 1952
None
None
None
None
11,368.78
15,872.82
[1]
[2]
$49,418.78
$57,406.73
$46,274.04
$9,248.52
*177 5103E
5103F
5103G
5103H
Total houses constructed
3
1
2
2
Last house completed
10/ 5/51
9/ 6/51
9/14/51
10/30/51
Houses sold by Dec. 31, 1951
None
1
1
None
Construction costs
$26,994.11
$8,864.40
$16,565.84
$21,662.91
Construction fees
2,100.00
None [4]
1,400.00
2,050.00
Maintenance reserve
150.00
50.00
100.00
100.00
Total costs
$29,244.11
$8,914.40
$18,065.84
$23,812.91
Payments: Payments during 1951
$26,550.00
$8,914.40
$16,830.31
$14,080.00
Payments during 1952
None
None
$ 1,235.53
2,863.39
2,694.11 [3]
6,869.52 [5]
$29,244.11
$8,914.40
$18,065.84
$23,812.91
5103I
5103J
5103K
Total houses constructed
3
1
5
Last house completed
10/29/51
10/12/51
9/27/51
Houses sold by Dec. 31, 1951
None
None
2
Construction costs
$24,875.10
$8,403.84
$52,990.70
Construction fees
2,100.00
700.00
3,400.00
Maintenance reserve
150.00
50.00
250.00
Total costs
$27,125.10
$9,153.84
$56,640.70
Payments: Payments during 1951
$27,125.10
$6,000.00
$54,940.70
Payments during 1952
None
3,153.84
1,700.00
$27,125.10
$9,153.84
$56,640.70
*178 Contracts 5103 A, B, C, G, I, J and K have provisions respecting construction fee adjustments substantially as follows: The Contractor further agrees that his fee of Seven Hundred Dollars ($700.00) per each dwelling shall not exceed the Owner's profit and in the event the Owner's profit shall be less than the Contractor's fee, then said Contractor's fee shall be proportionately reduced to an amount equal to the profit which the Owner shall have on each dwelling. In any event, the Contractor shall receive not less than his actual cost as referred to in this agreement. The Owner's profit is hereby determined to be the difference between his cost and the selling price. The Owner's cost, for the purpose of this agreement, shall not exceed the Contractor's fee, the Contractor's actual cost and the Owner's expenses, to be a maximum of Fourteen Hundred Fifty Dollars ($1450.00) per each dwelling. The selling price for the purpose of this agreement is hereby established at not less than Twelve Thousand Dollars ($12,000.00) per each dwelling. In the event any of said dwellings is not sold by the time of completion the above will not apply to said unsold dwelling or dwellings. *179 It is further understood that the Contractor shall receive his actual cost and Contractor's fee of Seven Hundred Dollars ($700.00) in full for each dwelling not later than 35 days after completion of each dwelling and will then refund to the Owner any monies due him. The only differences among the contracts is that the dollar amount of the construction fees, maximum selling expenses, and minimum selling price varied with the different contracts. The total maximum allowable selling expenses and total minimum allowable selling price for the contracts are as follows: Selling Ex-
Selling
Contract
penses
Price
5103 A
$ 7,250
$60,000
5103 B
10,500
75,000
5103 C
7,250
60,000
5103 D
1,450
12,000
5103 G
2,900
24,000
5103 I
4,350
36,000
5103 J
1,450
12,000
5103 K
10,500
75,000
The provisions of contract 5103 D were similar to those quoted above with the exception that the language "In the event any of said dwellings is not sold by the time of completion the above will not apply to said unsold dwelling or dwellings" was omitted. Contracts 5103 E and F contained no construction fee adjustment provisions, contract 5103 F not providing for *180 a construction fee at all. Contract 5103 H had no written fee adjustment provisions. However, the parties had an oral provision similar to the written provisions contained in the other contracts. Of the 27 houses remaining unsold on December 31, 1951, on job 5103, all but 8 were sold during 1952. During 1951 petitioner made a $50 construction fee adjustment on contract 5103 I, and in 1952 made adjustments of $2,226.06 on contract 5103 A and $586.79 on contract 5103 E. Contracts 5105 A and 5105 B called for the construction of a total of 145 houses all of which were completed by November 2, 1951. Fifteen of the houses were sold by the owners during 1951. Fifty more houses were sold during January and February 1952, and all but one house was sold by the end of 1952. The two contracts together had construction costs of $844,525.73, construction fees of $76,050, and maintenance reserves of $7,250. Petitioner received payment in full on both contracts by February 22, 1952. No part of the $76,050 construction fees was included in petitioner's 1951 income. The two contracts 5105 A and 5105 B did not have any written provisions for construction fee adjustments but the parties to the *181 two contracts had orally agreed that petitioner's construction fee as to each contract would not exceed the overall profit made by the owner on the sale of all the houses under such contract. These contracts provided that petitioner would receive payment in full of his construction costs and fees not later than 35 days after completion of the houses. No part of the $76,050 construction fee was refunded by petitioner. For 1952 petitioners' deferred income of $9,819.45 represented construction fees on contract 5202. Twenty houses were built under contract 5202 in 1952 for a total cost of $100,019.87. During 1952 the amount of $101,381.17 was paid in cash to petitioner covering costs and part of his construction fee. Petitioner completed construction of all 20 houses in 1952. Petitioner concedes that to the extent his fee was paid in cash he should have accrued the income. Therefore, petitioner now seeks to defer accrual of only $8,456.15 instead of $9,819.45. Contract 5202 contained oral construction fee adjustment provisions similar to contracts 5105 A and B. None of the houses built under contract 5202 was sold by the owner during 1952. This contract also provided for payment *182 to petitioner in full of all construction costs and fees not later than 35 days after completion of the houses. No part of the $9,819.45 construction fee was refunded by petitioner. Each owner or party obligated to make payments to petitioner on contracts under jobs 5103, 5105, and 5202 was solvent on December 31, 1951, on December 31, 1952, and at all other times material to this proceeding. Petitioner on his 1951 Federal income tax return excluded from income from completed jobs the amount of $122,013.75 of construction fees which amount was shown on his financial statement as "Deferred income from jobs." Petitioner included all of this amount except $2,862.85 in his income reported on his 1952 Federal tax return but excluded $9,819.45 as "deferred income" from 1952 jobs. Respondent in his notice of deficiency increased petitioner's 1951 income by the amount of $122,013.75 which he designated as "construction fees" and increased petitioner's 1952 income by $9,819.45 under the same designation with the following explanation: (a) It is determined that under the method of accounting regularly employed by you, construction fee income, omitted from your 1951 and 1952 returns, accrued *183 and was reportable in those years in the amounts of $122,013.75 and $9,819.45, respectively. Your reported income is accordingly increased by these amounts. At the trial respondent conceded that his failure to eliminate from petitioner's 1952 income the 1951 deferred income included therein was inconsistent with his inclusion of that deferred income in petitioner's 1951 income. Respondent admits that if his position with respect to the year 1951 is sustained, an amount of 1951 deferred income should be eliminated from petitioner's 1952 income and an overpayment in petitioner's income tax for 1952 determined. Opinion The issue here is primarily one of fact. Petitioner keeps his books and reports his income for Federal tax purposes on an accrual basis. Both parties recognize that under this accounting method items of income are includable when all events have occurred which fix the right of the taxpayer to receive such income and expense items are deductible when all events have occurred to fix the taxpayer's liability to pay. Continental Tie & L. Co. v. United States, 286 U.S. 290 (1932); Dixie Pine Co. v. Commissioner, 320 U.S. 516 (1944); and Security Mills Co. v. Commissioner, 321 U.S. 281 (1944). *184 It is, of course, the right to receive the income that is controlling and not whether there has been actual receipt thereof. We think it clear under the facts we have set forth that petitioner's construction fees on jobs 5103 and 5105 had accrued in 1951 and construction fees on contract 5202 accrued in 1952. The evidence shows that prior to the end of each of these years all events had occurred to fix petitioner's right to this income. The last house construction under job 5103 was completed on October 29, 1951, and the last house constructed under job 5105 was completed on November 2, 1951. Therefore the 35-day period after which petitioner was entitled to be paid in full had expired with respect to these contracts before the end of 1951. This right of petitioner under the contracts to be paid in full before the end of 1951 strongly indicates that all events had occurred to fix his right to the income in that year. The theoretical possibility that the owners' profits on their sale might not equal petitioner's construction fees and therefore some of the construction fees might have to be refunded, is not such a contingency as will delay the proper accrual of income. Cf. Estate of Whitaker, 27 T.C. 399, 404 (1956); *185 Dingle-Clark Co., 26 T.C. 782 (1956); Harbor Plywood Corporation, 14 T.C. 158 (1950) affirmed per curiam 187 F. 2d 734 (C.A. 9, 1951) and Helvering v. Nibley-Mimnaugh Lumber Co., 70 F. 2d 843 (C.A.D.C., 1934). The other facts likewise show that petitioner's construction fees had accrued in 1951. Except for relatively minor amounts, petitioner had either received payment or a promissory note, in some instances secured, for the total costs plus his fees on each contract in job 5103. Petitioner testified that the promissory notes were not intended to be payment but merely to secure the owners' obligation to petitioner. Cf. Jay A. Williams, 28 T.C. 1000 (1957); and Robert J. Dial, 24 T.C. 117 (1955). If petitioner were a cash basis taxpayer, it might be that the notes would not be payments but merely evidence of the maker's obligation to pay. For an accrual basis taxpayer payment is not necessary. The fixed obligation is the criterion of accrual. Most of the contracts in job 5103 provided that there would be no reduction in the construction fee if the house was not sold before completion. All the houses *186 covered by these contracts had been completed before the end of 1951. Therefore, there existed no contingency even as to petitioner's being required to refund a portion of this construction fee with respect to most of the houses in job 5103. Respondent contends that the evidence does not show oral modifications to contracts 5105A and 5105B. Petitioner's own testimony as to the exact provisions of the oral understandings was somewhat vague but this testimony is supported by the other parties to contracts 5105A and 5105B. We have accepted this testimony as the fact. Respondent contends that such oral modification to written contracts was, to the extent the contracts were not completed by the owners, not enforceable against petitioner at year end 1951 under California law. Section 1698 of the Civil Code of California provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Section 1661 in defining executed contracts states: "An executed contract is one, the object of which is fully performed. All others are executory." Where there is consideration for the oral modifications the party who has fully completed on *187 his side may enforce the oral terms against the other party. D. L. Godbey & Sons Constr. Co. v. Deane, 246 P. 2d 946 (1952). Passing over the question of whether petitioner received consideration for the oral construction fee adjustment provisions, we feel that the owners had not completed their side of the bargain until they sold the houses. The fee adjustment provisions contemplated a sale by the owners. Petitioner's obligations, according to the terms of the modification agreement, arose only when the owners had in fact failed to realize on sale of all the houses a total profit which was equal to petitioner's stated construction fee. Since, on neither of these contracts, had all the houses been sold by the owners by year end 1951, petitioner was not bound by his oral offer to adjust his construction fee. He could withdraw the provision at any time. Therefore, there was no binding contingency that would justify his deferring recognition of the construction fee beyond 1951. Even if we were to construe the fee adjustment provisions as being on a house-to-house basis, as provided in the written modifications to the contracts in job 5103, petitioner would not be bound as *188 to any houses remaining unsold at year end 1951, and as to the houses sold during 1951 there would be no contingency because the amount of the owner's profit on such sales would be known at that time. Assuming the oral modifications to contracts 5105A and 5105B were enforceable against petitioner at year end 1951, we feel that the provisions have not been shown to raise a sufficient contingency to withhold accrual of the construction fee. All the houses were completed by November 2, 1951. Petitioner received payment in full on the contract by February 22, 1952. Fifteen of the houses were sold by the owners before the end of 1951, thirty-three houses were sold in January 1952, and seventeen houses, sold in February 1952. Petitioner was obligated to return all or part of the $76,050 construction fee only if the owners' overall profit on all the houses fell below that amount. The $76,050 construction fee represented an approximate 9 percent profit on reimbursable costs of $844,525.73. The owners' function respecting the sale of the houses is not shown. Presumably, the owners were selling the houses to individual house purchasers. It would take a markup of approximately 8 percent on *189 their cost including the construction fee for the owners' profit to equal petitioner's fees. The record does not show what degree of uncertainty existed at year end 1951 as to the eventual profit to be made by the owners. The market conditions in California were not shown nor, more specifically, were the prospects at year end 1951 of the advantageous sale by the owners shown. For all the record shows, the owners shown. For all the record shows, the owners' prospects at year end 1951 may have been extremely good. They, in fact, may have profited on their sales far in excess of petitioner's construction fee and this fact may have been readily apparent at year end 1951. We do know that no part of the construction fee was refunded by petitioner and that many of the houses were sold by the end of 1951 and in the first 2 months of 1952. Negotiations on the houses sold at the start of 1952 must have commenced by year end 1951. Insofar as the record shows, there may have been some form of commitment for the sale of all these houses before the end of 1951. All but one of the 145 houses were sold before the end of 1952. The burden is on petitioner to show error in respondent's determination. *190 Permanent Homes Land Co., 27 B.T.A. 142, 149 (1932). Petitioner has failed to show such error with respect to respondent's determination that the $76,050 construction fee for job 5105 accrued in 1951. Much of what we have said with respect to contracts 5105A and B would also apply to contract 5202. Twenty houses were completed under this contract. All were completed by December 31, 1952, but the exact date of completion is not shown. The total costs were $100,019.87; the construction fee was $9,819.45. Petitioner in reporting his income for 1952 considered this entire fee as deferred income. Contract 5202 as written was modified by an oral agreement similar to the oral agreement with respect to contracts 5105A and B that petitioner's construction fee would not exceed the owner's eventual profit. None of the houses built under contract 5202 was sold by the owner in 1952. The record does not show when the houses were sold. Again there is nothing in the record to show what the reasonable expectations were at year end 1952 as to how much profit the owner would have on his sales. We do know that no part of the fee was returned to the owner. On these facts we feel that *191 the oral modification was not enforceable against petitioner at year end 1952, and furthermore, petitioner has not carried his burden of proving that there was any real chance that part of the fee might have to be refunded. Petitioner in arguing that there existed a substantial contingency that he might be required to refund part of the construction fees points to his past experience. During 1950 and 1951 petitioner started construction on 730 houses which petitioner asserts had fee adjustment provisions. A total of $91,812 was refunded to owners. There is no showing that these refunds came as a result of the fee adjustment provisions. The past experience shows that construction fees were reduced or refunded but this does prove that such a refund would be made on other contracts. Every construction contract is different as respects the prospects for profit to the owners. We sustain respondent as to the litigated issue. It is, however, necessary that there be eliminated from petitioner's 1952 income, construction fees included therein which accrued in 1951. Decision will be entered under Rule 50. Footnotes
1. The total fees arising from job 5103, as set forth in the various contracts, is $23,700. $175The discrepancy between this amount and the $23,525 amount deferred is not explained.↩
1. Promissory note dated and delivered November 19, 1951. ↩
2. Promissory note dated and delivered November 13, 1951. ↩
4. No fee charged. ↩
3. Promissory note dated and delivered December 5, 1951 secured by deed of trust and holding agreement. ↩
5. Promissory note delivered February 11, 1952 secured by a holding agreement.↩